IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

LOUISE HARRIS, # 275218,       )
                               )
        Petitioner,            )
                               )
v.                             )        Civil Action No. 2:11cv552-WKW
                               )                  (WO)
KIM TOBIAS THOMAS, *et al.*    )
                               )
        Respondents.           )

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

This matter is before the court on a petition for writ of habeas corpus under 28 U.S.C. § 2254 filed by Louise Harris ("Harris"), an Alabama inmate serving a sentence of life in prison without the possibility of parole.

**I.  INTRODUCTION AND PROCEDURAL HISTORY**

*A.  Proceedings in State Court*

On July 13, 1989, a jury empaneled before the Circuit Court for Montgomery County found Harris guilty of murder made capital because it was committed for pecuniary gain or pursuant to a contract for hire, a capital offense under § 13-5-40(a)(7), Ala. Code 1975.[1]  The jury recommended by a vote of 7 to 5 that Harris be sentenced to life in prison without the possibility of parole.  The trial court, however, rejected the jury's recommendation and on August 11, 1989, sentenced Harris to death.

---

[1] Section 13-5-40(a)(7) of Ala. Code 1975 defines "[m]urder done for a pecuniary or other valuable consideration or pursuant to a contract or for hire" as a capital offense.

Harris appealed, raising numerous claims of trial error.  On June 12, 1992, the

Alabama Court of Criminal Appeals issued an opinion affirming her conviction and sentence.

*Harris v. State*, 632 So.2d 503 (Ala. Crim. App. 1992).  The appellate court summarized the

evidence adduced at trial:

> The appellant was indicted for two counts of capital murder in the murder of Isaiah Harris:  murder for pecuniary gain or pursuant to a contract for hire and murder of a deputy sheriff while the deputy was on duty. Following the introduction of the State's evidence, the appellant moved that the second count of the indictment be dropped, because, she argues, the State failed to prove that Harris was on duty at the time of the offense.  The trial court granted this motion, and the case went to the jury only on the first count of the indictment. ....

> The record indicates that the appellant was involved in an affair with Lorenzo McCarter, a codefendant, while she was married to Harris.  The appellant and Harris had experienced marital problems in the past, which the victim apparently believed he had solved when he promised to buy the appellant a house.  The record indicates that the appellant asked McCarter to hire someone to kill her husband.  McCarter approached a co-employee about doing "the job"; however, the co-employee refused and told his supervisor about the solicitation.  McCarter then approached Michael Sockwell and Alex Hood, other codefendants, to commit the offense. McCarter knew that Sockwell owned a gun.  Prior to the offense, the appellant met with the three men and was shown the gun.  Sockwell and Hood were paid $100 in advance to commit the offense, with the promise that more money would be paid upon completion of the murder.  The State presented evidence of the existence of various insurance policies on the victim's life, with the appellant specified as the beneficiary.

> The victim [Isaiah Harris], who worked the night shift as a jailer, left his home at approximately 11:00 p.m. to go to work, after being awakened by the appellant a little later than usual.  Immediately after Harris left home, the appellant paged McCarter on his beeper, giving the message that her husband was leaving.  There was evidence that the appellant had paged McCarter on his beeper many times in the past to arrange liaisons. When he received the message in the instant case, McCarter was seated in Hood's car, located across

the street from the entrance to the subdivision in which Harris and appellant lived. Also present in the car were Alex Hood and Freddie Patterson. Patterson was unaware of the conspiracy. Sockwell was hidden behind the hedge located at the entrance to the subdivision. Harris was driving to work in his own 1979 black Ford Thunderbird automobile. When Harris stopped at the stop sign at the entrance of the subdivision, Sockwell shot him once in the face at close range with a shotgun. As a result, the lower half of the victim's face was blown off, leaving his teeth, tongue, and "matter" from his face blown across the car. After the shot, the victim's vehicle traveled slowly across the highway and came to a stop in a ditch.

When the victim failed to arrive at work by 11:25 p.m., a co-employee telephoned his home twice and spoke with the appellant. There was testimony that the appellant offered no assistance and that her speech was slow or sluggish. Two men, returning from work, discovered the victim's body shortly after midnight and telephoned the Montgomery Police Department. After the police arrived at the scene and identified the victim, several officers of the police department and employees of the Montgomery County Sheriff's Department went to the house of the victim and the appellant to notify the appellant of the victim's death. There was testimony that, upon being notified of the victim's death, the appellant began screaming and sobbing, but she shed no tears. Moreover, she became completely calm instantly in order to answer questions. A member of the Montgomery County Sheriff's Department, who knew both the appellant and the victim, testified that she asked the appellant why she did not appear to be upset, and that the appellant responded that she and the victim had been experiencing marital problems for some time. She also told the witness that she had engaged in several extramarital affairs, the current one being with Lorenzo McCarter. The appellant stated that she was in love with McCarter. In response to questions asked by an investigator with the sheriff's department, she responded that McCarter's car was broken down in the vicinity, and when asked if McCarter could have killed the victim, the appellant responded, "If he did kill him I didn't tell him to." At trial, McCarter elected to testify against the appellant, in exchange for the prosecutor's promise not to seek the death penalty in his case.

*Harris*, 632 So.2d at 508-09.

Harris applied for rehearing from the Alabama Court of Criminal Appeals' denial of

her appeal, which that court overruled on November 25, 1992. She then filed a petition for

3

writ of certiorari with the Alabama Supreme Court, which that court granted.  On June 25, 1993, the Alabama Supreme Court issued an opinion affirming her conviction and sentence. *Ex parte Harris*, 632 So.2d 543 (Ala. 1993).  Harris sought certiorari review in the United States Supreme Court, which was granted.  On February 22, 1995, the United States Supreme Court issued an opinion affirming her conviction and sentence.  *Harris v. Alabama*, 513 U.S. 504 (1995).

On June 22, 1995, Harris, through counsel, filed a petition for post-conviction relief under Rule 32 of the Alabama Rules of Criminal Procedure, raising numerous claims of trial error and ineffective assistance of counsel.  *Resp'ts Exh. Q-v.1* at 10-66.[2]  The State answered on July 24, 1995, and on July 31, 1995, it moved for partial dismissal of Harris's petition.  *Id*. at 110-73.  On August 27, 1998, the trial court dismissed several of Harris's claims as procedurally barred and found that several other claims were insufficiently pleaded under Ala.R.Crim.P. 32.6(b).  *Id*. at 1012-25.  The trial court granted Harris leave to amend the insufficiently pleaded claims.  *Id*.

On November 20, 1998, Harris filed an amended Rule 32 petition, which the State answered on January 19, 1999.  *Resp'ts Exh. Q-v.6* at 1049-1105, 1122-38.  Ultimately, the trial court dismissed all of Harris's claims except for her claim that the prosecution used its peremptory challenges in a racially discriminatory manner, in violation of *Batson v.*

---

[2] References in this Recommendation to exhibits ("*Resp'ts Exh*.") are to those included with the respondents' Answer, *Doc. No. 24*. Pagination nomenclature is that found in the particular referenced exhibit.  References to document numbers ("*Doc. No.*") are to those assigned by the Clerk in this civil action.

*Kentucky*, 476 U.S. 79 (1986), and her claims that she received ineffective assistance of counsel at trial and on appeal.   On July 26 and 27, 1999, an evidentiary hearing was conducted on those claims.  *Resp'ts Exhs. Q-v.15-v.17* at RR-1-446.  Additional testimony, in the form of the deposition of Harris's trial counsel Eric Bowen, was taken on July 28, 1999.  On April 16, 2002, the trial court entered an order denying Harris's amended Rule 32 petition.  *Id*. at 1696-1722.

Harris appealed that decision, and on October 29, 2004, the Alabama Court of Criminal Appeals issued an opinion affirming in part and reversing in part the trial court's denial of Harris's petition.  *Harris v. State*, 947 So. 2d 1079 (Ala. Crim. App. 2004).  While the Alabama Court of Criminal Appeals upheld the trial court's denial of Harris's claims alleging the ineffective assistance of her counsel during the guilt phase of the proceedings, it reversed the trial court's denial of Harris's claim that her trial counsel rendered ineffective assistance during the penalty phase.  The Alabama Court of Criminal Appeals remanded the case for a new sentencing hearing, finding a reasonable possibility that had counsel conducted adequate investigation into possible mitigating evidence, the trial court would have sentenced Harris to life imprisonment, not death.  *Id*. at 1331.  On May 27, 2005, the Alabama Court of Criminal Appeals overruled applications for rehearing from both Harris and the State.

Both Harris and the State filed petitions for writ of certiorari with the Alabama Supreme Court, and on October 21, 2005, that court denied the State's petition but granted

Harris's petition on her claims that (1) the prosecution's use of peremptory challenges violated *Batson*; (2) she was denied continuity in legal representation by counsel; and (3) several of her allegations of ineffective assistance of counsel were not, as previously found, precluded by findings of no plain error on direct appeal.  On May 12, 2006, however, the Alabama Supreme Court quashed its partial grant of Harris's petition for certiorari and affirmed the judgment of the Alabama Court of Criminal Appeals.  *Resp'ts Exh. JJ*.  A certificate of judgment was issued on August 9, 2006.

On November 9, 2010, the trial court resentenced Harris to life in prison without the possibility of parole.

## B.  Federal Habeas Petition

On July 7, 2011 (Doc. No. 1), Harris, through counsel, filed this petition for writ of habeas corpus raising the following claims:

1. The prosecution used its peremptory challenges in a racially discriminatory manner, in violation of *Batson v. Kentucky*, 476 U.S. 79 (1986), depriving her of equal protection and a fair trial.

2. She was denied effective assistance of counsel when–

   (a) she was denied continuity in legal representation at trial;

   (b) her trial counsel failed to obtain adequate compensation for her defense;

   (c) her trial counsel failed to protect her right to a fair and impartial jury by (i) failing to submit critical evidence supporting their motion for a change of venue, (ii) failing to secure adequate voir dire,

6

and (iii) failing to effectively argue her *Batson* claim;

(d)    her trial counsel failed to develop and execute an adequate defense strategy by (i) failing to investigate her domestic abuse history, (ii) failing to show that codefendent Lorenzo McCarter had an independent motive to kill Isaiah Harris, and (iii) failing to impeach key prosecution witnesses;

(e)    her trial counsel failed to challenge instances of State misconduct during her trial;

(f)    the cumulative effect of trial counsels' errors denied her a fair trial.

3.    The trial court erroneously denied her motion for a change of venue.

4.    The trial court erroneously limited the cross-examination of State's witnesses Alonzo Trimble and Freddie Patterson.

5.    The trial court failed to give essential jury instructions regarding knowledge and intent.

6.    The prosecutor engaged in instances of misconduct during closing argument.

7.    Her exclusion from critical proceedings, including a hearing in which her attorneys were dismissed, violated her rights to due process and a fair trial.

*Doc. No. 1* at 8-43.

The respondents filed an answer (*Doc. No. 24*) in which they argue that Harris's claims were properly adjudicated on the merits by the state courts and provide no basis for federal habeas relief, *see Williams v. Taylor*, 529 U.S. 362, 404-05 (2000), or are

7

procedurally defaulted because they were not properly presented to the state courts under applicable procedural rules, *see O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).  Harris was granted an opportunity to reply to the respondents' answer and did so.  *Doc. No. 28*.

After due consideration of the § 2254 petition, the answer of the respondents, Harris's reply to that answer, and the record in this case, the court concludes that an evidentiary hearing is not required, Rule 8(a), *Rules Governing Section 2254 Cases in United States District Courts*, and that the petition should be denied.

## II.  DISCUSSION

### A.  AEDPA's Standard of Review for Claims Adjudicated by the State Courts

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002).  "When it enacted [the AEDPA], Congress significantly limited the circumstances under which a habeas petitioner may obtain relief." *Hardy v. Allen*, 2010 WL 9447204, at *7 (N.D. Ala. Sep. 21, 2010).  To prevail on a properly presented § 2254 claim adjudicated on the merits by the state courts, a petitioner must show that a decision by the state courts was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or was "based on an unreasonable determination of the facts, in

light of the evidence presented in the State court proceeding." 28 U.S.C. §2254(d)(1) & (2);[3]

*see Williams v. Taylor*, 529 U.S. 362, 404-05 & 412-13 (2000).

A state court's decision is "contrary to" federal law either if it fails to apply the correct controlling authority, or if it applies the controlling authority to a case involving facts "materially indistinguishable" from those in a controlling case, but nonetheless reaches a different result. *Williams*, 529 U.S. at 404-06; *Bell*, 535 U.S. at 694. A state court's decision is an "unreasonable application" of federal law if it either correctly identifies the governing rule but then applies it to a new set of facts in a way that is objectively unreasonable, or it extends or fails to extend a clearly established legal principle to a new context in a way that is objectively unreasonable. *Id*. at 407. "Federal habeas relief [is] available under the 'unreasonable application' standard only if the state court's application of clearly established federal law was 'objectively unreasonable.'" *Parker v. Head*, 244 F.3d 831, 835 (11th Cir.

_____

[3] Section 2254(d) provides:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim adjudicated on the merits in State court proceedings unless the adjudication of the claim –

(1)   resulted in a decision contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court; or

(2)   resulted in a decision based on an unreasonable determination of the facts, in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d)(1) & (2).

2001) (citing *Williams*, 529 U.S. at 409-10). "Objectively unreasonable" means something more than an "erroneous" or "incorrect" application of clearly established law, and a reviewing federal court may not substitute its judgment for the state court's even if the federal court, in its own independent judgment, disagrees with the state court's decision. *See Williams*, 529 U.S. at 411; *Lockyer v. Andrade*, 538 U.S. 63, 76 (2003). The Court of Appeals for the Eleventh Circuit has held, "Clearly established federal law is *not* the law of the lower federal courts, including this Court. Instead, in the habeas context, clearly established federal law 'refers to the holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state court decision.'" *Putman v. Head*, 268 F.3d 1223, 1241 (11th Cir. 2001) (emphasis in original, quoting *Williams*, 529 U.S. at 412). The reviewing court "must determine what arguments or theories supported or ... could have supported[ ] the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court." *Harrington v. Richter*, 562 U.S. 86, __, 131 S.Ct. 770, 786 (2011). "This is a 'difficult to meet,' and 'highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt.'"[4] *Cullen v. Pinholster*, __ U.S. __, __, 131 S.Ct. 1388, 1398 (2011) (internal

---

[4] "In order to merit AEDPA deference the state court need not expressly identify Supreme Court precedent, nor make a perfect statement of the applicable rule of law, nor provide a detailed opinion covering each aspect of the petitioner's argument." *Smith v. Secretary, Dept. of Corrections*, 572 F.3d 1327, 1333 (11th Cir. 2009). "All that is required under § 2254(d)(1) [for deference to the decision of the state court] is an adjudication on the merits, not a full state court opinion." *Parker* (continued...)

10

citations omitted).

Federal district courts are likewise directed to determine whether the state court based its findings on "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). A state court's determinations of fact shall be "presumed to be correct," and the habeas petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). Even when the state court addresses a question of law, this court is not authorized "to evaluate [a petitioner's] claim *de novo* rather than through the lens of § 2254(d)." *Price v. Vincent*, 538 U.S. 634, 639 (2003).

## B. Claims of Trial Error

### 1. Prosecution's Use of Peremptory Challenges

Harris contends that the prosecution used its peremptory challenges in a racially discriminatory manner in violation of *Batson v. Kentucky*, 476 U.S. 79 (1986), depriving her of equal protection and a fair trial. *Doc. No. 1* at 8-20. After Harris raised a *Batson* objection at trial, the court determined that she had failed to establish a prima facie *Batson* case.

In *Batson*, the Supreme Court held that the Equal Protection Clause of the Fourteenth Amendment prohibits using peremptory challenges to exclude jurors on the basis of race. *Batson*, 476 U.S. at 89. Under *Batson*, a defendant attempting to show that the prosecutor used racial discrimination in striking the jury must first establish a prima facie case of

---

[4](...continued)
*v. Secretary, Dept. of Corrections*, 331 F.3d 764, 776 (11th Cir. 2003).

discrimination.  476 U.S. at 96.  This effort may be accomplished by showing that the defendant is a member of a cognizable racial group, that the prosecutor has used his or her peremptory challenges to remove members of that race from the venire, and "that these facts and any other relevant circumstances raise an inference that the prosecutor used that practice to exclude the veniremen from the petit jury on account of their race."[5]  *Id*.  In determining whether a prima facie case has been established, the trial court must consider "all relevant circumstances."  *Id*.  Only after the trial court determines that a prima facie case of discrimination has been made is the prosecutor required "to come forward with a neutral explanation for challenging black jurors."  *Id*. at 97.

When considering whether an objector has made a prima facie case as a first step, a court must consider all relevant circumstances which include, but are not limited to: (1) a prosecutor's pattern of strikes against black jurors included in the venire, *Batson*, 476 U.S. at 97; (2) the prosecutor's questions and statements during voir dire examination, *id*.; (3) the failure of a prosecutor to ask meaningful questions to the struck jurors, *Miller-El v. Dretke*, 545 U.S. 231, 244-45 (2005); (4) "the subject matter of the case ... if it is racially or ethnically sensitive," *United States v. Ochoa–Vasquez*, 428 F.3d 1015, 1045 n.39 (11th Cir. 2005); and (5) evidence of past discrimination in jury selection, *Miller-El*, 545 U.S. at 266.

Here, in objecting under *Batson*, Harris's trial counsel alleged that there were 17 black

---

[5] Once a prima facie case under *Batson* has been established, "the burden shifts to the prosecutor to articulate a clear, reasonably specific and neutral explanation for challenging the black jurors." *United States v. David*, 844 F.2d 767, 769 (11th Cir. 1988).  *See Purkett v. Elem*, 514 U.S. 765, 767 (1995).

veniremembers on a panel of 51, that the prosecutor used 11 of her 19 strikes to remove

blacks, and that the "percentage of that is there's an indication of prejudicial striking of the

jury under *Batson*." *Resp'ts Exh. A-v.2* at R-236. The prosecutor responded that Harris had

failed to make a prima facie showing under *Batson*. *Id*. at R-237. She stated that in

Montgomery County, the black population constituted approximately 40% of the general

population. *Id*. She noted that of the 14 jurors, which included the 2 alternates, 8 were white

and 6 were black. *Id*. Of the two alternates, one was white and one was black. *Id*. She

concluded that, of the original 12 jury members, 7 would be white and 5 black, which would

make the black percentage of representation on the jury over 40%. *Id*. Harris's counsel

responded, stating that, because the prosecutor used 11 of her 19 strikes against blacks, she

should have to show some reason for doing so. *Id*. at R-238, R-240. The trial court denied

the *Batson* motion.

Harris pursued her *Batson* claim on direct appeal, where it was rejected by the

Alabama Court of Criminal Appeals. *Harris v. State*, 632 So.2d 503, 512-13 (Ala. Crim.

App. 1992). The appellate court addressed the *Batson* claim as follows:

> In a companion case, which was tried by the same prosecutor in the
> same county, this court addressed this same claim under a basically identical
> factual situation. In *Hood v. State*, 598 So.2d 1022 (Ala.Cr.App. 1991), the
> trial court found that the defendant failed to make a prima facie showing under
> *Batson* that the State had used its peremptory challenges in a discriminatory
> manner. In that case, the jury venire consisted of 44 veniremembers, 15 of
> whom were black. The prosecutor exercised 10 of her 16 peremptory
> challenges against black veniremembers, resulting in a jury composed of 5
> blacks and 7 whites. In that case, as in the present case, the defendant "relied
> only on the number of blacks struck by the State. Defense counsel did not

13

bring to the circuit court's attention any other factor which might tend to show that the prosecutor purposefully discriminated against potential jurors on the basis of race." In *Hood v. State*, this court relied on the following language in *Harrell v. State*, 571 So.2d 1270 (Ala. 1990), cert. denied, 499 U.S. 984, 111 S.Ct. 1641, 113 L.Ed.2d 736 (1991):

> "[A] defendant cannot prove a prima facie case of purposeful discrimination solely from the fact that the prosecutor struck one or more blacks from the jury. A defendant must offer some evidence in addition to the striking of blacks that would raise an inference of discrimination. When the evidence shows only that blacks were struck and that a greater percentage of blacks sat on the jury than sat on the lawfully established venire, an inference of discrimination has not been created. Logically, if statistical evidence may be used to establish a prima facie case of discrimination, by showing a discriminatory impact, then it should also be available to show the absence of a discriminatory purpose."

*Id*. at 1271-72. This court, in *Hood v. State*, supra, stated:

> "Although both this court and the Alabama Supreme Court have observed that the assistant district attorney who prosecuted the appellant has a history of using peremptory challenges to discriminate against black jurors, *see Ex parte Bird & Warner*, [Ms. 89-1061 and 89-1062, December 6, 1991] [594] So.2d [676] (Ala. 1991), that history, standing alone, does not establish a prima facie case for the defense in any given case. Compare *Harrell v. State*, 571 So.2d at 1272 (past conduct of the prosecutor, in connection with other facts relating to the particular venire, is relevant in determining whether an inference of discrimination exists); *Ex parte Bird & Warner*, [594] So.2d at [681-82] ('evidence [of past history], in conjunction with the disparate impact of the peremptory strikes in this case, ... raises an inference of discriminatory intent'). In this case, the prosecutor did not state any reason for striking any member of the venire. Under these circumstances, *Harrell* dictates that we uphold the trial court's determination that the appellant did not establish a prima facie case under *Batson* and *Ex parte Branch*, 526 So.2d 609 (Ala. 1987), for the following reasons: (1) the

14

> trial court was presented with no evidence of alleged discrimination other than the number of blacks struck by the State, and (2) the peremptory striking process did not have a disparate impact upon the number of blacks empaneled as jurors.  Instead, the process resulted in a jury of proportionately more black citizens than the venire from which it was selected."

> Because the same relevant facts and law apply to the present case, as those pertinent to this court's holding in *Hood v. State*, supra, we find that the trial court properly held that the appellant failed to make a prima facie showing of purposeful discrimination in the prosecutor's use of peremptory challenges against blacks.

*Harris*, 632 So.2d at 513.

Harris argues that the state court's resolution of her *Batson* claim was inconsistent with *Batson* because the trial court and the Alabama Court of Criminal Appeals relied on "the erroneous reasoning of *Hood v. State*, 598 So.2d 1022 (Ala. Crim App. 1991), and *Harrell v. State*, 571 So.2d 1270 (Ala. 1990) ('*Harrell II*')."  *Doc. No. 1* at 17.  After the Alabama Court of Criminal Appeals issued its opinion affirming Harris's conviction and sentence on direct appeal (and after the Alabama Supreme Court also affirmed), the Alabama Supreme Court released its opinion in *Ex parte Thomas*, 659 So.2d 3 (Ala. 1994), which clarified language in *Harrell v. State*, 571 So.2d 1270 (Ala. 1990) ("*Harrell II*"), where that Court had stated:

> When the evidence shows only that blacks were struck and that a greater percentage of blacks sat on the jury than sat on the lawfully established venire, an inference of discrimination has not been created.

571 So.2d at 1271 (*Harrell II*).  In *Ex parte Thomas*, the Court disapproved this statement to the extent it had been construed to mean that a defendant cannot establish a prima facie

*Batson* violation whenever the percentage of blacks on the jury is greater than the percentage that was on the venire.  659 So.2d at 6-8.  The Court disapproved this statement as it had been applied in these instances, because such applications prevent a defendant from using other factors indicating discrimination that were approved in both *Ex parte Branch*, 526 So.2d 609 (Ala. 1987), and *Batson*, that is, "any other relevant circumstances" raising an inference that the prosecutor used his or her peremptory challenges to remove veniremembers from the petit jury on account of their race.  *Id*. at 7; *see Batson*, 476 U.S. at 96.

The Court in *Ex parte Thomas* went on to say:

> We emphasize that our disapproval of the construction that has been given *Harrell II* does not mean that an increased percentage of blacks on the jury can never be a circumstance to be considered in ruling whether a discriminatory use of peremptory strikes has been shown.  In a proper case, the fact that the percentage of blacks on the jury is higher than the percentage of blacks on the venire may be a factor to be considered in deciding whether a prima facie case of discrimination has been made or rebutted.

659 So.2d at 8.

As the Alabama Court of Criminal Appeals has recognized:

> In *Thomas*, the Alabama Supreme Court held that the mere fact that the percentage of blacks on the jury is equal to or exceeds the percentage of blacks on the venire cannot negate what would otherwise be a prima facie case of racial discrimination.  In other words, if a trial court would otherwise have found a prima facie case of racial discrimination, the court cannot find that no prima facie case exists solely because the percentage of blacks on the jury exceeds the percentage of blacks on the venire.  Implicit in this holding is the requirement that a prima facie case of racial discrimination was actually established before the trial court used 'statistics' to negate it.  Thus, ... *Thomas* does not prevent the trial court from considering statistics, along with the numerous other factors set out in *Ex parte Branch*, 526 So.2d 609 (Ala.1987), [and *Batson*] in denying a defendant's *Batson* motion.

16

*Perkins v. State*, 808 So.2d 1041, 1075 (Ala. Crim. App. 1999), *aff'd*, 808 So.2d 1143 (Ala. 2001), *vacated on other grounds*, 536 U.S. 953 (2002).

Here, despite the prosecutor's and the Alabama Court of Criminal Appeals' references to the percentage-comparison language of *Harell II*[6] in assessing Harris's *Batson* claim, the record does not support a conclusion that the state courts failed to consider all other relevant circumstances that may be looked to in determining whether an inference was raised that the prosecutor's peremptory challenges were race-based, or that the state courts used the mere fact that the percentage of blacks on Harris's jury exceeded the percentage of blacks on the venire to "trump" what would otherwise have been a prima facie case of racial discrimination. Other than pointing to the number of strikes the prosecutor had used against potential jurors who were black, Harris's counsel did not bring to the trial court's attention any other factor that might tend to support an inference of discrimination. Thus, the state court's reference to the percentage-comparison language of *Harrell II* was not for the purpose of negating a demonstrated inference of race-based peremptory challenges, but rather was a circumstance the court considered in determining whether any inference of discrimination had been demonstrated. The Alabama Supreme Court in *Ex parte Thomas* recognized there is no impropriety in such a consideration. *Ex parte Thomas*, 659 So.2d at

---

[6] The court notes that the prosecutor's response to Harris's *Batson* claim compared the percentage of blacks on the jury with the percentage of blacks in Montgomery County. The percentage-comparison language of *Harrell II* compares the percentage of blacks on the jury with the percentage of blacks on the venire. A higher percentage of blacks served on Harris's jury than were present on the venire from which jurors were selected.

8. That is, where there were no other factors giving rise to an inference of discrimination, this was "a proper case," *id.*, for the court to consider that the percentage of blacks on the jury was higher than the percentage of blacks on the venire as *a factor* in deciding whether a prima facie case of discrimination had been made. That does not mean that the state courts ignored or failed to consider other circumstances relevant to a determination of whether an inference of discrimination was made.

This court does not agree with Harris's contention that the prosecution's use of 11 of 19 strikes against black veniremembers reflects a "pattern of strikes" against black jurors included in the venire. In *United States v. Dennis*, 804 F.2d 1208 (11th Cir. 1986), the government used three of its six peremptory challenges in selecting the jury; two of the potential jurors stricken from the venire were black. The government also challenged the selection of a potential alternate juror who was black. The final jury included two blacks and one black alternate. The Eleventh Circuit concluded from these facts:

> It is thus obvious that the government did not attempt to exclude all blacks, or as many blacks as it could from the jury. Moreover, the unchallenged presence of two blacks on the jury undercuts any inference of impermissible discrimination that might be argued to arise from the fact that the prosecutor used three of the four peremptory challenges he exercised to strike blacks from the panel of potential jurors and alternates.... We thus conclude that all of the relevant facts and circumstances do not raise an inference of purposeful discrimination on the basis of race, and that appellants were not entitled to any inquiry into the prosecutors reasons for exercising his peremptory challenges as he did.

*Dennis*, 804 F.2d 1211.

As in *Dennis,* the jury composition in Harris's case undercuts any inference of

18

impermissible discrimination that might arise simply by the striking of black veniremembers. *See also, e.g., Central Alabama Fair Housing Center, Inc. v. Lowder Realty Co., Inc.*, 236 F.3d, 629, 638 (11th Cir. 2000) ("[T]he unchallenged presence of jurors of a particular race on a jury substantially weakens the basis for a prima facie case of discrimination in the peremptory striking of jurors of that race."); *United States v. Puentes*, 50 F.3d 1567, 1578 (11th Cir. 1995) ("Although the presence of African-American jurors does not dispose of an allegation of race-based peremptory challenges, it is a significant factor tending to prove the paucity of the claim."); *United States v. Jiminez*, 983 F.2d 1020, 1023 (11th Cir.1993) (noting that the presence of blacks on the jury was "significant" in reviewing the district court's denial of a *Batson* challenge).

Elsewhere, the Eleventh Circuit has recognized:

> While it is true that striking a black venireperson for racial reasons violates the Constitution, it is not true that all peremptory strikes of black venirepersons are for racial reasons. In making out a prima facie case, "the defendant must point to more than the bare fact of the removal of certain venirepersons and the absence of an obvious valid reason for the removal." *United States v. Young–Bey*, 893 F.2d 178, 179 (8th Cir. 1990). *See also United States v. Dawn*, 897 F.2d 1444 (8th Cir.1990) ("numbers alone are not sufficient to establish or negate a prima facie case"); *United States v. Moore*, 895 F.2d 484, 485-86 (8th Cir.1990) (same); *United States v. Lewis*, 892 F.2d 735, 736 (8th Cir. 1989) (same). "[T]he defendant must identify facts and circumstances that support the inference of discrimination, such as a pattern of discriminatory strikes, the prosecutor's statements during voir dire suggesting discriminatory purpose, or the fact that white persons were chosen for the petit jury who seemed to have the same qualities as stricken black venirepersons." *Young-Bey*, 893 F.2d at 180 (citing *Batson*, 476 U.S. at 96-97, 106 S.Ct. at 1722-23); accord *Dennis*, 804 F.2d at 1210.

*United States v. Allison*, 908 F.2d 1531, 1537-38 (11th Cir. 1990).

19

Here, 17 out of 51, or approximately 33%, of the prospective jurors on the panel were black, and the prosecutor used 11 out of 19, or approximately 58%, of her strikes, to strike black venire members, leaving 14 jurors (which included the 2 alternates) seated in the box, of whom 8 were white and 6 were black.  Of the two alternates, one was white and one was black.  As was well established in the state courts, approximately 42% of the seated jurors were black.  While the prosecutor's strike rate of 58% against black venire members was higher than the percentage of black venire members (33%), the prosecutor exercised those strikes during a process in which defense counsel used at least 17 of 19 strikes to strike white venire members.  As the respondents note (*Doc. No. 24* at 16), with each strike of a white venire member, defense counsel reduced the total number of whites the prosecutor was able to pass upon when using the State's peremptory challenges, and increased the percentage of the remaining panel comprising black venire members exposed to being stricken during jury selection.  The significance of the strike percentage was thus distorted.  Harris fails to demonstrate a "pattern of strikes" by the prosecutor against black jurors on her venire sufficient to create an inference of discrimination.

For the reasons discussed above, this court finds Harris does not demonstrate that the Alabama Court of Criminal Appeals unreasonably applied clearly established federal law in affirming the trial court's determination that Harris failed to establish a prima facie *Batson* case.  She points to no United States Supreme Court decision showing that the state court decision on this claim was contrary to, or involved an unreasonable application of, federal

law as announced by the Supreme Court. *See* 28 U.S.C. § 2254(d)(1). The state court decision finding insufficient support for an inference of discrimination likewise constituted a reasonable determination of the facts in light of the evidence presented. *See* 28 U.S.C. § 2254(d)(2). For these reasons, Harris is not entitled to federal habeas relief based on this claim.

### 2.    Motion for Change of Venue

Harris contends that the trial court erroneously denied her motion for a change of venue because, she says, prejudicial pretrial publicity so saturated the community that she was deprived of a fair trial in Montgomery County. *Doc. No. 1* at 33-35.

Criminal defendants tried in state court have a Fourteenth Amendment right to a fair trial by a panel of impartial, unbiased jurors. *Irvin v. Dowd*, 366 U.S. 717, 722-24 (1961). A jury is presumed impartial, and the burden rests with the challenger to show otherwise. *Id*. at 723. A court must grant a change of venue only when pretrial publicity prejudices a defendant's right to a fair trial by an impartial jury. *Id*. Prejudice from pretrial publicity is rarely presumed; extensive media coverage and knowledge within the community of the crimes and of the defendant are insufficient by themselves to create a presumption of prejudice. *Dobbert v. Florida*, 432 U.S. 282, 303 (1977). Rather, the Supreme Court has held that presumed prejudice exists only where a conviction was "obtained in a trial atmosphere that had been utterly corrupted by press coverage." *Murphy v. Florida*, 421 U.S. 794, 798 (1975).

21

The Eleventh Circuit has stated:

> The law on pretrial publicity as it relates to the necessity for a change of venue is clear.  The standards governing this area
>
>> derive from the Fourteenth Amendment's due process clause, which safeguards a defendant's Sixth Amendment right to be tried by a panel of impartial, indifferent jurors. The trial court may be unable to seat an impartial jury because of prejudicial pretrial publicity or an inflamed community atmosphere. In such a case, due process requires the trial court to grant defendant's motion for a change of venue....

*Coleman v. Kemp*, 778 F.2d 1487, 1489 (11th Cir. 1985) (internal citations and quotation marks omitted).  This does not mean, however, that a defendant is entitled to a change of venue whenever potential jurors have been exposed to the facts of the case.

> It is not required ... that jurors be totally ignorant of the facts and issues involved.  In these days of swift, widespread and diverse methods of communication, an important case can be expected to arouse the interest of the public in the vicinity, and scarcely any of those best qualified to serve as jurors will not have formed some impression or opinion as to the merits of the case. This is particularly true in criminal cases.  To hold that the mere existence of any preconceived notion as to the guilt or innocence of an accused, without more, is sufficient to rebut the presumption of a prospective juror's impartiality would be to establish an impossible standard.  It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court.

*Irvin v. Dowd*, 366 U.S. 717, 722-23, 81 S.Ct. 1639, 1642-43, 6 L.Ed.2d 751 (1961).

> A defendant is entitled to a change of venue if he can demonstrate either "actual prejudice" or "presumed prejudice."
>
> To find the existence of actual prejudice, two basic prerequisites must be satisfied.  First, it be shown that one or more jurors who decided the case entertained an opinion, before hearing the evidence adduced at trial, that the defendant was guilty.  Second, these jurors, it must be determined, could not

> have laid aside these preformed opinions and rendered a verdict
> based on the evidence presented in court.

*Coleman v. Zant*, 708 F.2d 541, 544 (11th Cir. 1983) (internal citations and
quotation marks omitted).  If a defendant cannot show actual prejudice, then
he must meet the demanding presumed prejudice standard.

> Prejudice is presumed from pretrial publicity when pretrial
> publicity is sufficiently prejudicial and inflammatory and the
> prejudicial pretrial publicity saturated the community where the
> trials were held. The presumed prejudice principle is rarely
> applicable, and is reserved for an extreme situation.... [W]here
> a petitioner adduces evidence of inflammatory, prejudicial
> pretrial publicity that so pervades or saturates the community as
> to render virtually impossible a fair trial by an impartial jury
> drawn from the community, jury prejudice is presumed and there
> is no further duty to establish bias.

*Kemp*, 778 F.2d at 1490 (internal citations and quotation marks omitted); *see
also Manning v. State*, 378 So.2d 274, 276 (Fla. 1979) ("[A] determination
must be made as to whether the general state of mind of the inhabitants of a
community is so infected by knowledge of the incident and accompanying
prejudice, bias, and preconceived opinions that jurors could not possibly put
these matters out of their minds and try the case solely on the evidence
presented in the courtroom.").

*Meeks v. Moore*, 216 F.3d 951, 960-61 (11th Cir. 2000) (footnote omitted).

Harris pursued her change-of-venue claim on direct appeal, where it was discussed

and denied by the Alabama Court of Criminal Appeals:

> The appellant argues that the trial court erred in denying her motion for
> a change of venue.  The record indicates that, prior to trial, a hearing was held
> on the appellant's motion for a change of venue, during which an investigator
> testified for the appellant.  He stated that he had taken a survey of 25 to 30
> people in different areas of Montgomery County. He testified that he had
> driven around the county, stopping at various locations, and that he had
> attempted to question different types of people.  He admitted that his survey
> was informal and unscientific and that he had no specialized training or polling

skills. He testified that his findings revealed that 35% to 40% of the people questioned had a fixed opinion as to the appellant's guilt. The appellant offered no further evidence in support of her motion. This showing was not sufficient to prove that the community was saturated with prejudicial publicity.

"Absent a showing of abuse of discretion, a trial court's ruling on a motion for change of venue will not be overturned. *Ex parte Magwood*, 426 So.2d 929, 931 (Ala.), cert. denied, 462 U.S. 1124, 103 S.Ct. 3097, 77 L.Ed.2d 1355 (1983). In order to grant a motion for change of venue, the defendant must prove that there existed actual prejudice against the defendant or that the community was saturated with prejudicial publicity. *Sheppard v. Maxwell*, 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1966); *Franklin v. State*, 424 So.2d 1353 (Ala. Crim. App. 1982). Newspaper articles or widespread publicity, without more, are insufficient to grant a motion for change of venue. *Anderson v. State*, 362 So.2d 1296, 1298 (Ala. Crim. App. 1978). As the Supreme Court explained in *Irvin v. Dowd*, 366 U.S. 717, 723, 81 S.Ct. 1639, 1642–43, 6 L.Ed.2d 751 (1961):

"'To hold that the mere existence of any preconceived notion as to the guilt or innocence of an accused, without more, is sufficient to rebut the presumption of a prospective juror's impartiality would be to establish an impossible standard. It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court....'

"The standard of fairness does not require jurors to be totally ignorant of the facts and issues involved. *Murphy v. Florida*, 421 U.S. 794, 799-800, 95 S.Ct. 2031, 2035-2036, 44 L.Ed.2d 589 (1975). Thus, '[t]he proper manner for ascertaining whether adverse publicity may have biased the prospective jurors is through the voir dire examination.' *Anderson v. State*, 362 So.2d 1296, 1299 (Ala. Crim. App. 1978)."

*Ex parte Grayson*, 479 So.2d 76, 80 (Ala. 1985), cert. denied, 474 U.S. 865, 106 S.Ct. 189, 88 L.Ed.2d 157 (1985).

Moreover, the appellant has failed to prove that there existed any actual prejudice against her. The jurors who indicated that they had any knowledge of the case were questioned individually concerning the extent of their knowledge, the source of that knowledge, and the ability to disregard the information and decide the case based upon the facts presented in court. No juror remaining on the venire indicated that he or she could not decide the case based on the facts presented and on the law as instructed by the court. Thus, there was no actual prejudice demonstrated by the appellant resulting from pretrial publicity. *Irvin v. Dowd*, 366 U.S. 717, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961).

632 So.2d at 517-18.

Harris fails to prove that the community was saturated with prejudicial pretrial publicity or that there existed any actual prejudice against her. The jurors who indicated they had any knowledge of the case were questioned individually, and only those who said they could decide the case based on the facts and the law as instructed by the court remained on the venire. The state court ruling denying Harris's change-of-venue claim was not contrary to, or an unreasonable application of, clearly established Supreme Court precedent, and it was not an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d)(1) & (2). Harris is not entitled to habeas relief on this claim.

In connection with this claim, Harris argues that "the amount of prejudicial pretrial publicity, coupled with the presence in the courtroom of members of the sheriff's department and the close association between the jury and members of the sheriff's department, rose to the level of inherent prejudice, depriving petitioner of a fair trial in violation of the Sixth and Fourteenth Amendments to the United States Constitution." *Doc. No. 1* at 34. The respondents correctly observe (*Doc. No. 24* at 56-57) that the presence-of-sheriff's-deputies

25

rationale was not coupled with the change-of-venue claim presented by Harris in the state courts. The presence-of-sheriff's-deputies argument was presented as a separate claim alleging prejudice because of events that occurred during Harris's trial. Harris presented this claim on direct appeal, where it was rejected by the Alabama Court of Criminal Appeals:

> The appellant argues that it was error for sheriff's deputies to manage and be in charge of the jurors during their sequestration and deliberations, in light of the fact that the victim was a deputy sheriff. The record reveals that the appellant objected on this ground at trial, and that the trial court responded that the deputies had long been assigned to court detail and that the trial court was familiar with them. The trial court further stated that the deputies were "well aware of their responsibilities." There is no indication or claim by the appellant of any improper behavior by the deputies in this regard or of any improper communications between the deputies and the jury. Thus, there is no evidence of prejudice to the appellant.

> In *Holloway v. State*, 477 So.2d 487 (Ala.Cr.App. 1985), overruled on other grounds, *Ex parte McCree*, 554 So.2d 336 (Ala. 1988) a manslaughter case, the defendant argued that because the sheriff and several deputies were witnesses for the State, the trial court should not have allowed the sheriff's department to manage the jury and to sequester them. In that case, this court noted that there was no evidence of prejudice to the defendant. This court held:

>> "'Reversible error will not be presumed, but the burden is upon the appellant to show injury in this respect.' *Bowens v. State*, 54 Ala.App. 491, 309 So.2d 844 (1974), cert. denied, 293 Ala. 746, 309 So.2d 850 (1975).

>> "Section 12-16-10, Code of Alabama 1975, establishes the duty of the sheriff to provide suitable lodging and meals for members of a sequestered jury. Furthermore, the sheriff and deputies are the proper officers to have charge of the jurors during their deliberations, and that includes the rendering of such services to them as their physical conditions require. *Pounders v. State*, 55 Ala.App. 204, 314 So.2d 123 (1975)."

26

> *Holloway v. State*, supra, at 488.  Because there is no indication of any prejudice to the appellant in the deputies' overseeing of the jury, we find no error as to this matter.

*Harris*, 632 So.2d at 518-19.

Harris does not demonstrate that she was prejudiced by the presence of sheriff's deputies in the courtroom or by the sheriff's deputies' management of jurors during their sequestration and deliberations.  Any such prejudice is entirely speculative.  The state court decision rejecting this claim was not contrary to, or an unreasonable application of, United States Supreme Court precedent, and it was not an unreasonable determination of the facts in light of the evidence presented.  This claim does not entitle Harris to habeas relief.

### 3.     Limitations on Cross-examination of State's Witnesses

Harris contends that the trial court erroneously limited the defense's cross-examination of State's witnesses Alonzo Trimble and Freddie Patterson, in violation of her rights under the Sixth Amendment's Confrontation Clause.  *Doc. No. 1* at 35-37.

The Sixth Amendment guarantees criminal defendants the right to be confronted with adverse witnesses.  U.S. Const. amend. VI.  The main purpose of this right is to secure the opportunity for cross-examination, but a defendant does not have the right to cross-examination that is effective in whatever way, and to whatever extent, he might wish. *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986).  The right does not prevent reasonable limitations based upon concerns about, among other things, harassment, prejudice, confusion of the issues, witness safety, or repetitive or marginally relevant testimony.  *See id.*  A

27

defendant states a violation of his right to confrontation by showing that he was prohibited from engaging in otherwise appropriate cross-examination designed to expose facts from which jurors could appropriately draw inferences relating to the reliability of the witness. *Van Arsdall*, 475 U.S. at 680. Defendants must be permitted to engage in cross-examination where a reasonable jury might receive a "significantly different impression" of a witness's credibility based on the questioning. *See id*.

Because of the discretion trial courts have in evidentiary matters and the deference mandated by 28 U.S.C. § 2254, a federal court on habeas review gives the state court doubly deferential review. *Small v. Florida Dept. of Corrections*, 470 Fed. App'x 808, 809 (11th Cir. 2012). For purposes of defining "clearly established federal law" under § 2254, a state court satisfies the "significantly different impression" test when it permits some questioning about a witness's biases. *Id*. Trial courts have wide discretion to limit cross-examination when they have allowed the defendant to expose some evidence of bias. *Id*.

### Cross-examination of Alonzo Trimble

State's witness Alonzo Trimble testified that he worked with Lorenzo McCarter and that he was approached by him and solicited to commit the murder. During the defense's cross-examination of Trimble, Harris's counsel asked him if he was still on probation. *Resp'ts Exh. A-v.3* at R-490. Trimble responded that he was not. *Id*. The prosecutor then asked that counsel's question and Trimble's answer be stricken because there was "no basis whatsoever for [the defense counsel's] asking that question." *Id*. The prosecutor indicated

28

she had no knowledge that Trimble had ever been on probation, and Harris's counsel

responded that the defense had been informed Trimble was on probation.  *Id*. at R-490-91.

Thereafter, the court called Trimble into chambers with counsel for the parties and asked if

Trimble had ever been convicted and on probation.  During a lengthy discussion, it was

determined that Trimble was on probation for a car theft conviction in Macon County.  *Id*.

at. R-494-506

Thereafter, when cross-examination of Trimble was continued in the presence of the

jury, the following transpired:

[DEFENSE COUNSEL]: Mr. Trimble, have you been convicted of a crime
involving moral turpitude?

[PROSECUTOR]:  Object, Your Honor. McElroy's is clear
that's not the way to ask the question.  Must be specific about
the crime itself.

THE COURT:  Lay your predicate.

[DEFENSE COUNSEL]:   Have you been convicted of a crime of moral
turpitude concerning a theft of an automobile?

[PROSECUTOR]:  Objection, Your Honor.  That's improper
way to ask it and I cite the Court to McElroy's at section–

THE COURT:  Overruled.  You may answer.

[DEFENSE COUNSEL]:  Mr. Trimble?

[WITNESS]:  Repeat that again?

[DEFENSE COUNSEL]:   Yes, sir.  Have you been convicted of a crime
involving moral turpitude concerning the theft of an automobile?

[WITNESS]:  Yes, I have.

[DEFENSE COUNSEL]:  Okay.  And were you convicted of that, oh, about a year ago in Tuskegee?

[WITNESS]:  Yes.

[DEFENSE COUNSEL]:  All right.  And were you put on probation?

[WITNESS]:  I didn't have a probation officer.

[PROSECUTOR]:  Objection, Your Honor.  He's going too far now.

THE COURT:  Sustained.

(WHEREUPON, the following occurred at the bench:)

[DEFENSE COUNSEL]:  Judge, it was my understanding the ruling was changed.  Once we showed the offense we would be allowed to show he was on probation.  He admitted the offense, he admitted the theft of – moral turpitude involving theft of an automobile and I'd like to show he was on probation at this time.

[PROSECUTOR]:  Judge, not under impeachment.

THE COURT:  For what purpose?

[DEFENSE COUNSEL]:  To impeach these statements, his testimony here today.

THE COURT:  How?

[DEFENSE COUNSEL]:  I think it shows he would be inclined to cooperate with the State.

THE COURT:  Sustain the objection unless you show me some law.

30

> [DEFENSE COUNSEL]:  Okay. Thank you."

*Resp'ts Exh. A-v.3* at 512-14.

Harris argues she had the right to question Trimble further concerning his probation in order to demonstrate bias or self-interest.  *Doc. No. 1* at 35-37.  On direct appeal, the Alabama Court of Criminal Appeals addressed Harris's claim that the trial court erred in limiting the cross-examination of Trimble:

> In the present case, whether the witness was placed on probation arising out of a conviction in another county, i.e., Macon County, does not indicate possible bias in testifying for the State in a case arising out of Montgomery County.
>
> > "'It is generally held, even in jurisdictions where such evidence is not ordinarily admissible, that the fact that a witness has been arrested or charged with crime may be shown or inquired into where it would reasonably tend to show that his testimony might be influenced by interest, bias, or a motive to testify falsely. This principle has been held applicable in cases where criminal charges are pending in the same court against a witness for the prosecution in a criminal case at the time he testifies, as a circumstance tending to show that his testimony is or may be influenced by the expectation or hope that, by aiding in the conviction of the defendant, he would be granted immunity or rewarded by leniency in the disposition of his own case.  But it has been held that the pendency of charges against the witness in another county or jurisdiction cannot be shown under this theory of admissibility.'"
>
> *Woodard v. State*, 489 So.2d 1, 2-3 (Ala.Cr.App. 1986), quoting 81 Am.Jur.2d *Witnesses* § 589, at pp. 597-98 (1976).
>
> Because the district attorney's office in Montgomery County could not have made any recommendations toward his sentencing in Macon County, [Trimble] could not have been helped by testifying in the present case.  Nor is there any indication in the record that he was promised any help.  Therefore,

31

because the "extent of cross-examination on irrelevant facts, for the purpose of testing bias or credibility of the witness's testimony, is a matter resting largely in the discretion of the trial court, [whose] ruling will not be disturbed unless it appears that it has abused its discretion to the prejudice of the complaining party," *Beavers v. State*, 565 So.2d 688, 689-90 (Ala.Cr.App. 1990), we find no error in the instant case.

*Harris*, 632 So.2d at 523.

Harris has not demonstrated that there is no reasonable basis upon which the Alabama Court of Criminal Appeals could have denied her claim. That court found no evidence indicating that Trimble had been promised any benefit in exchange for his testimony. Nor was there any evidence that Trimble's testimony was motivated or influenced by any concern on his part about his probationary status in Macon County. Harris's confrontation clause rights were not violated here. Moreover, despite the alleged limitation of the cross-examination of Trimble, "during the defense counsel's closing argument, he argued to the jury that Trimble's alleged conviction and probation provided the motive and bias for his testimony against the appellant." *Harris*, 632 So.2d at 523. Accordingly, the Alabama Court of Criminal Appeals could also have reasonably concluded that any Sixth Amendment error was harmless. The state court decision rejecting Harris's claim was not contrary to, or an unreasonable application of, clearly established precedent, and it was not an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d)(1) & (2). This claim does not entitle Harris to habeas relief.

### Cross-examination of Freddie Patterson

Harris contends that her confrontation clause rights were violated by the trial court's

32

limitation of her cross-examination of State's witness Freddie Patterson. *Doc. No. 1* at 35-37. Patterson was present in the car with Lorenzo McCarter, Michael Sockwell, and Alex Hood when the victim was shot. He was not charged in Harris's case, and the State presented evidence that he had no knowledge of the planned murder. Harris maintains that she should have been allowed to question Patterson concerning an unrelated felony charge, which was pending against him at the time he was brought in for questioning in her case.[7] *Id*. She argues that she had the right to question Patterson concerning this charge, as well as his other arrests and convictions, in order to demonstrate bias or self-interest. *Id*.

The Alabama Court of Criminal Appeals addressed this claim at length on Harris's direct appeal:

> The record reveals that, during the direct examination of Patterson, he testified that he went to the police station to talk to an officer concerning this case approximately four days after the other three men who had been present in the automobile had been arrested. He testified that he voluntarily went to the police department and "turned [himself] in and talked to them." He further testified that he was never charged in this case, but that, when he turned himself in, a charge of leaving the scene of an accident was pending against him in Montgomery County. He testified that he subsequently pleaded guilty to that charge. He further testified that he had been convicted of theft of property in the second degree, arising from an incident in Autauga County. Thereafter, during a conference outside the presence of the jury, the trial court held that the defense counsel would be allowed to question the witness concerning the conviction in order to show possible bias and self-interest. However, he ruled that the defense counsel would not be allowed to go into the details of the unrelated offense. Defense counsel responded that he had no intention of so questioning the witness. During a later conference outside the hearing of the jury, defense counsel stated that he had a copy of Patterson's

---

[7] Patterson later pled guilty to a misdemeanor on the charge.

"rap sheet" and that he wished to question the witness concerning the convictions. Defense stated that he should be permitted to do so, because the State had previously "opened the door" to this subject by asking the witness whether he had ever been in trouble with the law. The trial court held that the State's question concerned felony convictions, and the trial court noted that he had "allowed you [the defense] to go into the – by prior ruling – to the leaving the scene of an accident, but I do not think that that opened it up to any other misdemeanor arrest and so forth and so on." Defense counsel responded:

> "We did not go into it. This is their question. The prosecution asked this question; we did not ask this question. We did not ask the question, and we think it's part of her constitutional rights, on her right of confrontation, her right of due process under protection of law to be able to go into the subject which the prosecution has raised, particularly on a key witness like this."

Moreover, the defense counsel was allowed to argue during his closing argument that the witness's involvement in the crime, arrest under suspicion of the charges, and prior convictions all tended to prove his bias and self-interest in testifying for the State.

> """The scope of cross-examination in a criminal proceeding is within the discretion of the trial judge and it is not reviewable except for the trial judge's prejudicial abuse of discretion. *Jackson v. State*, Ala.Cr.App., 353 So.2d 40, cert. denied, 353 So.2d 48 (1977). *McFerrin v. State*, Ala.Cr.App., 339 So.2d 127 (1976). The right to a thorough and sifting cross-examination of a witness does not extend to matters that are collateral or immaterial and the trial judge is within his discretion in limiting questions which are of that nature. *McLaren v. State*, Ala.Cr.App., 353 So.2d 24, cert. denied, 353 So.2d 35 (1977); *McDonald v. State*, Ala.Cr.App., 340 So.2d 103 (1976)."

> "'*See also Burton v. State*, 487 So.2d 951 (Ala.Cr.App. 1984). While rather wide latitude is allowed on cross-examination, the

court has reasonable discretion in confining the examination to
prevent diversion to outside issues.'"

*Steeley v. State*, 622 So.2d 421 (Ala.Cr.App. 1992), quoting *Beavers v. State*,
565 So.2d 688, 690 (Ala.Cr.App. 1990).

In *McMillian v. State*, 594 So.2d 1253 (Ala.Cr.App. 1991), remanded on other
grounds, 594 So.2d 1288 (Ala. 1992), this court held that the trial court had not
abused its discretion in limiting the defendant's cross-examination of a key
State's witness, where the defendant had sought to ask the witness about the
following subjects: how long he had spent in prison for a forgery conviction,
"an unrelated pending murder case," and when the witness intended to meet
with his attorney and enter his guilty plea in the instant case. This court held:

> "These questions sought to elicit collateral and irrelevant matter;
> therefore, the trial court did not abuse its discretion in sustaining
> the objections to them. The evidence of [the witness's] criminal
> record, which was substantial, was before the jury. The jury was
> made aware that he had been convicted and had served time for
> burglary, forgery, and theft. The jury was also aware that [the
> witness] had made a deal with the State to enter a plea of guilty
> to a lesser charge at a later time in return for his testimony."

*McMillian v. State*, supra, at 1261-62.

Even if the prosecutor, in fact, "opened the door" to the appellant's
questions concerning these unrelated charges and convictions against the
witness, and even in light of the witness's key role as one of the two main
nonaccomplice witnesses against the appellant, any error in limiting this
cross-examination was harmless.

> "'[A] party is given wide latitude on cross-examination to test
> a witness's partiality, bias, or interest.' *Perry v. Brakefield*, 534
> So.2d 602, 608 (Ala. 1988). The rule in this state,
> notwithstanding the general principle concerning the
> development of the interest or bias of a witness, is that the range
> of cross-examination rests largely in the discretion of the trial
> court and that the court's rulings will not be disturbed unless it
> clearly appears that the defendant was prejudiced by the rulings.
> However, 'where the witness' testimony is important to

determination of the issues being tried, there is little, if any, discretion in the trial judge to disallow cross-examination on matters which tend to indicate the bias of the witness.' *Wells v. State*, 292 Ala. 256, 258, 292 So.2d 471, 473 (1973).

"... '"[T]he extent to which a witness may properly be cross-examined as to collateral circumstances for the purpose of showing bias depends in some instances upon the *importance of his testimony*, and especially upon whether such testimony is of a nature to be seriously affected by prejudice, bias, or hostility."' *Louisville & N.R. v. Martin*, 240 Ala. 124, 131, 198 So. 141, 147 (1940) (emphasis in original).  '[I]t is an abuse of discretion and a violation of constitutional rights to deny to a defendant the right to cross-examine a witness at all on a "subject matter relevant to the witness's credibility," such as the witness's possible motive for testifying falsely.' *United States v. Brown*, 546 F.2d 166, 169 (5th Cir. 1977)....

"....

"Although we are extremely reluctant to hold that any improper limitation of cross-examination constitutes harmless error, we are convinced beyond any reasonable doubt that the error in this case did not contribute to the verdict of the jury. *See Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).  Violations of the confrontation clause of the Sixth Amendment are subject to harmless error analysis. *Delaware v. Van Arsdall*, 475 U.S. 673, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986).

"'[W]e hold that the constitutionally improper denial of the defendant's opportunity to impeach a witness for bias, like other Confrontation Clause errors, is subject to *Chapman [v. California*, 386 U.S. 18, 87 S.Ct. 824], harmless-error analysis. The correct inquiry is whether, assuming that the damaging potential of the cross-examination were fully realized, a reviewing court might nonetheless say that the error was harmless beyond a reasonable doubt.  Whether such an

> error is harmless in a particular case depends
> upon a host of factors, all readily accessible to
> reviewing courts.   Those factors include the
> importance of the witness' testimony in the
> prosecution's case, whether the testimony was
> cumulative, the presence or absence of evidence
> corroborating or contradicting the testimony of
> the witness on material points, the extent of
> cross-examination otherwise permitted, and, of
> course, the overall strength of the prosecution's
> case.'

"*Van Arsdall*, 475 U.S. at 684, 106 S.Ct. at 1438."

*Hooper v. State*, 585 So.2d 142, 145-46 (Ala.Cr.App. 1991), cert. denied, 503
U.S. 920, 112 S.Ct. 1295, 117 L.Ed.2d 517 (1992).

> In the present case, in light of the overall strength of the prosecution's
> case, any error by the trial court in limiting this cross-examination was
> harmless because the witness admitted that he had been in trouble with the law
> and that he had a criminal record; and the appellant was allowed to
> cross-examine the witness concerning his previous conviction, which was
> pending at the time of his questioning.

*Harris*, 632 So.2d at 527-29.

Once again, Harris has not demonstrated that there is no reasonable basis upon which

the Alabama Court of Criminal Appeals could have denied her claim.  That court found the

prosecutor did not open the door to Patterson's entire criminal history merely by asking him

about a single felony conviction.  Patterson's leaving the scene of an accident conviction was

brought out on direct examination, and Harris was allowed to cross-examine him concerning

the conviction.  Harris fails to specify any other conviction, charge, or crime that would have

been admissible as impeachment or that would have related to Patterson's motives for

testifying.  Under the circumstances, she fails to establish a denial of her confrontation clause rights.  Moreover, the Alabama Court of Criminal Appeals found any error in limiting Harris's questioning of Patterson about his criminal history was harmless beyond a reasonable doubt in light of the overall strength of the prosecution's case and because Patterson's criminal history was, in fact, placed before the jury.  *See Harris*, 632 So. 2d at 529.  The state court decision rejecting Harris's claim was not contrary to, or an unreasonable application of, clearly established precedent, and it was not an unreasonable determination of the facts in light of the evidence presented.  Therefore, this claim does not entitle Harris to habeas relief.

### 4.     Failure to Instruct Regarding Knowledge and Intent

Harris argues that she was denied due process and a fair trial because the trial court did not instruct the jury (1) that the State had to prove she had knowledge of the insurance benefits she was to receive in the event of her husband's death and (2) that the State, to prove she was guilty of aiding and abetting in the capital murder, had to present sufficient evidence that she had the requisite intent to kill the victim.  *Doc. No. 1* at 37-38.  She maintains that these purported deficiencies in the trial court's jury instructions improperly relieved the State of its burden of proving every element of the charged offense.  *Id.*

Harris raised this claim on direct appeal, where the Alabama Court of Criminal Appeals analyzed it under the plain-error standard:

> The appellant argues that the trial court's instructions during the guilt phase of her trial violated the Fifth, Sixth, Eighth, and Fourteenth

Amendments to the United States Constitution and Article I, §§ 1, 6, and 15 of the Constitution of Alabama. The record indicates that the appellant failed to object to any of these allegations of error and, therefore, these instances must be analyzed pursuant to the "plain error" doctrine.

The appellant argues that the trial court failed to instruct the jury that the State was required to prove that she knew about her husband's insurance and retirement benefits before she could be found guilty of committing murder for pecuniary gain. The record indicates that the trial court charged the jury that it must be convinced that the appellant committed the intentional murder and that the murder was committed for a pecuniary gain or pursuant to a contract for hire. This language substantially tracks the language of § 13A-5-40(a)(7), Code of Alabama 1975. "A charge which tracks the identical language of the statute is proper. *Jordan v. State*, 17 Ala.App. 575, 87 So. 433, cert. denied, 205 Ala. 114, 87 So. 434 (1920)." *King v. State*, 595 So.2d 539 (Ala.Cr.App. 1991). Moreover, charges which track the language of a Code section are sufficient. See generally *Salter v. State*, 578 So.2d 1092, 1096 (Ala.Cr.App. 1990), writ denied, 578 So.2d 1097 (Ala. 1991).

....

The appellant claims that the trial court failed to instruct the jury that a particularized intent to kill must be proved beyond a reasonable doubt. However, a review of the trial court's entire charge reveals that the jury was charged as to the requisite particularized intent to kill.

*Harris*, 632 So.2d at 537-38.

Jury instructions violate due process if they "fail[ ] to give effect to [the] requirement" that the prosecution must prove every element of a charged offense beyond a reasonable doubt. *Middleton v. McNeil*, 541 U.S. 433, 437 (2004).[8] However, "a state prisoner making a claim of improper jury instructions faces a substantial burden." *DelValle v. Armstrong*, 306

---

[8] Harris maintains that the Alabama Court of Criminal Appeals' decision was contrary to *Carella v. California*, 491 U.S. 263, 265 (1989), where the United States Supreme Court held that jury instructions that relieve the prosecution of its burden of proving each and every element of the charged offense violate a defendant's due process rights. *Doc. No. 1* at 37-38.

F.3d 1197, 1200 (2d Cir. 2002).  The petitioner must establish that "'the ailing instruction by itself so infected the entire trial that the resulting conviction violat[ed] due process,' not merely [that] 'the instruction is undesirable, erroneous, or even universally condemned.'" *Id*. at 1201 (quoting *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977); *Cupp v. Naughten*, 414 U.S. 14, 146-47 (1973)); *see also Middleton*, 541 U.S. at 437 (explaining that "not every ambiguity inconsistency, or deficiency in a jury instruction rises to the level of a due process violation").

Here, the trial court instructed jurors that they could find Harris guilty of capital murder only if they found "the defendant committed such murder of the intentional killing-type for a pecuniary or other valuable consideration[.]" *Resp'ts Exh. A-v.5* at R-934; *see also id.* at R-930-31.  Implicit in any finding by jurors that Harris killed *for* pecuniary consideration is the premise that she knew of the existence of such pecuniary consideration. It cannot be said that the jury was confused as to the necessary elements of murder for pecuniary consideration.  The trial court's instruction did not relieve the State of its burden of proving all elements of the charged offense.  The Alabama Court of Criminal Appeals' decision in this regard was not contrary to, or an unreasonable application of, clearly established precedent, and it was not an unreasonable determination of the facts in light of the evidence presented.  28 U.S.C. § 2254(d)(1) & (2).  Harris therefore is not entitled to habeas relief on this claim.

Likewise, the trial court's instructions regarding aiding and abetting did not relieve

the State of its burden of proving all elements of the charged offense.  The trial court twice instructed jurors that the State had to prove that the defendant intentionally caused the death of the victim "in order to invoke the capital statute," telling jurors that "the intent to kill must be real and specific."  *Resp'ts Exh. A-v.5* at R-931.  And, when instructing jurors on the elements of aiding and abetting, the trial court explained that the State had to prove "either that the defendant intentionally procured, induced, or caused the other person or persons to commit the murder; or that the defendant intentionally aided or abetted the other person or persons in committing the murder."  *See id*. at R-931-33.  The trial court's instructions sufficiently charged the jury that, under a theory of abetting and abetting, the State was required to prove Harris had a particularized intent to kill.  The Alabama Court of Criminal Appeals' decision rejecting Harris's claim here was not contrary to, or an unreasonable application of, clearly established precedent, and it was not an unreasonable determination of the facts in light of the evidence presented.

Further, as the respondents argue (*Doc. No. 24* at 65-66), almost all of the evidence of Harris's role in aiding and abetting in the victim's murder related to her procurement of the murder through Lorenzo McCarter, Michael Sockwell, and Alex Hood, and such evidence inherently reflected Harris's own particularized intent to kill. Thus, no reasonable juror could have found that Harris aided and abetted in the victim's murder without also finding she had a particularized intent to kill.  *See Rose v. Clark*, 478 U.S. 570, 580-81 (1986) (errors in misinstruction may be harmless where "the predicate facts conclusively

establish intent, so that no rational jury could find that the defendant committed the relevant criminal act but did not intend to cause injury"). Consequently, Harris is not entitled to habeas relief on this claim.

### 5.    Prosecutorial Misconduct During Closing Arguments

Harris alleges that the prosecutor engaged in instances of misconduct during closing arguments in form of improper statements to the jury, which she says rendered her trial fundamentally unfair. *Doc. No. 1* at 39-41.

To find prosecutorial misconduct based on allegedly improper remarks, "a two-pronged test must be met:  (1) the remarks must be improper, and (2) the remarks must prejudicially affect the substantial rights of the defendant." *Spencer v. Secretary, Dep't of Corrections*, 609 F.3d 1170, 1182 (11th Cir. 2010) (citation omitted).  The Supreme Court has determined that "it is not enough that the prosecutors' remarks were undesirable or even universally condemned." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (citing *Darden v. Wainwright*, 699 F.2d 1031, 1036 (11th Cir. 1983)).  The relevant question is whether the prosecutor's comments "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974). Isolated passages of a prosecutor's argument, even if imperfect, do not suggest that a jury will be so profoundly affected so as to affect the fundamental fairness of a trial.  *Id*. at 646-47.  The appropriate standard of review for such a claim on writ of habeas corpus is "the narrow one of due process, and not the broad exercise of supervisory power."  *Id*. at 642.

Harris contends the prosecutor misled jurors by making various false statements during closing arguments about the testimony and interests of witnesses. *Doc. No 1* at 39. In this regard, she maintains:

- The prosecution improperly stated that Freddie Patterson had "nothing to gain" by testifying, despite the fact that he had charges pending against him when he was asked to testify.

- The prosecution described Alonzo Trimble as having nothing to gain by testifying, despite the fact he was on probation when he became involved in the case.

- The prosecution stated that Trimble had not changed his story at all about an alleged phone call made to him by Harris, when he actually gave a version of that story in chambers that was substantially different from the one he gave in open court.

- The prosecution stated that there was no evidence Lorenzo McCarter had a criminal record, when McCarter had prior convictions and arrests.

- The prosecution stated McCarter would "have his day in court" when McCarter actually had a plea agreement with the State that spared him from an adversarial proceeding.

*Id*.

On direct appeal, the Alabama Court of Criminal Appeals discussed the alleged impropriety of these remarks and found that all were proper inferences from the evidence:

> The prosecutors comment that State's witness Patterson had no reason to lie and that State's witness Trimble had nothing to gain were proper inferences from the evidence. The evidence showed that Patterson was not an accomplice to the murder and that Trimble was in no way suspected of being involved. Moreover, there is no evidence of any bargains made in exchange for Trimble's testimony. These comments by the prosecutor were also proper as reply in kind to defense counsel's previous argument that both witnesses

were biased and had a motive for testifying for the State.

*Harris*, 632 So.2d at 532.

* * *

The prosecutor's statement that Trimble did not change his testimony concerning his voice identification of Harris was a proper argument. Although Trimble initially testified that the appellant was not identified as "the voice" on the telephone, subsequently, during a conference outside the presence of the jury, Trimble testified that he had misunderstood the trial court's initial question concerning the identification. Although an inference could be drawn that the witness intentionally changed his testimony, it is also possible that he misunderstood the question.

*Id*. at 533-34.

* * *

The prosecutor's comments that there was no evidence that McCarter had a criminal conviction and that McCarter had made consistent statements concerning the murder since his arrest were proper inferences from the evidence. The record indicates that there was no evidence before the jury of any convictions, although McCarter had admitted that Harris got him "out" when he had been charged with driving under the influence. Moreover, McCarter's statements had not significantly changed since he had admitted his guilt.

*Id*. at 533.

* * *

The appellant also argues that the prosecutor's statement that Lorenzo McCarter would "have his day in court" was not a proper inference from the evidence. However, the record indicates that the agreement made by the State, in order to gain McCarter's testimony, was that the State would not seek the death penalty in McCarter's capital murder trial. There was no evidence that the charges against McCarter would be dropped or that McCarter would plead guilty to the capital offense. Moreover, even if McCarter were to plead guilty, the State would still have to prove his guilt. *See* § 13A-5-42, Code of

44

Alabama 1975.

*Id*. at 532.

"A prosecutor's comments [in closing argument] must be viewed in the context of the record as a whole, and will be the basis of reversal only if they result in prejudice affecting the substantial rights of the defendant." *United States v. Harmas*, 974 F.2d 1262, 1269 (11th Cir. 1992). A prosecutor may state conclusions drawn from the evidence. *United States v. Johns*, 734 F.2d 657, 663 (11th Cir. 1984). "During closing argument, the prosecutor, as well as defense counsel, has a right to present his impressions from the evidence, if reasonable, and may argue every legitimate inference." *Coral v. State*, 628 So.2d 954, 985 (Ala.Crim.App. 1992).

Fairly considered in the context of the entire trial, none of these challenged remarks by the prosecutor was clearly improper, as all remarks were reasonable inferences from the evidence. Further, none of the challenged remarks was sufficiently misleading or egregious as to require a finding of substantial prejudice. The remarks did not so infect the trial with unfairness as to make the resulting conviction a denial of due process. Harris does not point to any Supreme Court case, for which the facts are "materially indistinguishable" from the instant case, holding that such comments made during the prosecutor's summation required reversal of the conviction. The Alabama Court of Criminal Appeals' decision was not contrary to, or an unreasonable application of, clearly established precedent, and it was not an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C.

§ 2254(d)(1) & (2).  Therefore, the challenged remarks do not provide a basis for habeas relief.

Harris maintains that the prosecutor made other improper arguments during closing argument and argued several facts that were completely unsupported by the evidence.  *Doc. No. 1* at 39-40.  In this regard, she maintains:

- The prosecution improperly stated that Harris was able to "concoct" a good story because she was able to see the State's files (through open-file discovery) before trial.

- The prosecution improperly argued that she moved out of the house with her in-laws in order to carry on an affair with McCarter, when she had never lived in a house with her in-laws but rather merely in one they owned.

- The prosecution improperly stated that she wanted to kill her husband because he was getting a car loan.

- The prosecution improperly stated that when a police sergeant called her to report that her husband had not reported to work, she sounded as if she had been drinking.

*Id*. at 39-40.

On direct appeal, the Alabama Court of Criminal Appeals addressed the alleged impropriety of these comments by the prosecution:

The comment made by the prosecutor concerning the State's open file discovery was as follows:

"You saw her [the appellant's] testimony, and you saw she had her story down pretty good.  She's had what, eighteen months, eighteen months since she started planning this.  Fourteen – sixteen months since she's been arrested.  She's had nothing to do but get her story straight, with the advantage of

46

having every piece of evidence the State had through its resources, she had. So you see, she had our resources, too, didn't she – and the advantage of being able to concoct her story to fit as best it could. The State has–

"[DEFENSE COUNSEL]: Objection, Your Honor. That's not the evidence and – it's not a legitimate inference from the evidence.

"THE COURT: Let's move on. It's argument."

Prior to this comment, during defense counsel's closing argument, the following transpired:

"And how do you prove your innocence? Now remember, when you think about that, think of all the resources of the State. You've got Investigators, Sheriff's Department, you've got the Police Department, you've got numerous resources to gather evidence. Think about all those resources being focused on one little Louise Harris. Think about the overwhelming burden that is to one little individual with limited resources. Think about your friend or whoever was charged with that type offense. Have some compassion for them."

The State's reference to the fact that the appellant had access to all of the State's evidence was a proper reply in kind to the appellant's argument that she had very limited resources, as opposed to those of the State. ...

Moreover, even if this comment could be considered error as comments on matters not in evidence, the comment would constitute harmless error.

*Harris,* 632 So.2d at 531-32.

* * *

The comment by the prosecutor that the appellant moved out of her mother-in-law's house so that she could have the privacy in which to carry on an affair was a reasonable inference from the evidence. There was evidence presented that the appellant was very unhappy with the fact that she was living with the victim's mother, and there was also evidence that the appellant had

been involved in other extramarital affairs prior to the one with Lorenzo McCarter.

*Id*. at 533.

* * *

The prosecutor's comment that the appellant had possibly been drinking or was otherwise intoxicated when she was called concerning the victim's whereabouts on the night of his murder was a proper inference from the evidence.  There was testimony that the appellant's speech was slurred and sluggish during the telephone call and, when questioned the witness, who had placed the call, stated that he was uncertain whether this could have been the result of a state of intoxication.

*Id.*

* * *

The prosecutor's comment that the appellant wanted the victim killed by Friday because of a car loan was also a proper inference from the evidence. Trimble testified that the appellant had stated she wanted the victim killed by Friday because he was dipping into his insurance policies in order to build an addition onto their house.  There was also testimony that the appellant knew that her husband was in the process of purchasing an automobile for her daughter.  The prosecutor further stated that the car loan did not "come through" as a reply in kind to defense counsel's argument during his closing statement, wherein he stated:

> "Look at this loan application that they've made a big to-do over.  Take this back and look at it.  Sergeant Harris was buying a car for Louise's daughter.  Eight hundred and fifty dollars. They have been trying to tell you all this time she had to get him killed before he got the eight hundred and fifty dollars. Now this is real important to them.  They struggled to get this in. They – you know, they brought witnesses up here and they got it in and here it is.  Take this application back and look at it.  If you don't know from your own experience, this application is going to tell you.  When you go down to get a loan at the Credit Union you have credit life on it, and it's right there – credit life.

48

> Now what does that mean?  We all know if Sergeant Harris had
> gotten the eight hundred and fifty dollars and then been killed,
> the loan would have been paid for and they would have had
> another car in the family."

*Id*.

The Alabama Court of Criminal Appeals found that these challenged comments were either legitimate inferences from the evidence or legitimate replies-in-kind to arguments by defense counsel and, that if any comment was improper, the error was harmless to Harris. None of these comments was sufficiently misleading or egregious as to require a finding of substantial prejudice.  It does appear that both the prosecutor and Harris's counsel made comments during closing arguments suggesting, incorrectly, that Harris at one time resided in a house with her in-laws when she apparently had never done so.  *See Resp'ts Exh. A-v.5* at 861.  However, any statement by the prosecutor suggesting the assumed (if incorrect) fact that Harris moved away from her in-laws so that she could more easily carry on an affair would have been no more damaging to Harris than Harris's own admission that she had at least three affairs while married to the victim.  Thus, if the prosecutor's remarks in this regard were erroneous, any error was harmless to Harris and could not have so infected the trial with unfairness as to make Harris's conviction a denial of due process.  Harris does not point to any Supreme Court case, for which the facts are "materially indistinguishable" from the instant case, holding that such comments require reversal of the conviction.  The state court decision here was not contrary to, or an unreasonable application of, clearly established precedent, and it was not an unreasonable determination of the facts in light of the evidence

presented.  The prosecutor's remarks provide no basis for habeas relief.

Finally, Harris maintains that the prosecutor improperly referred to the victim's status as a law enforcement officer during closing argument and presented evidence during the State's case-in-chief regarding the victim's status as a law enforcement officer.  *Doc. No. 1* at 40.  As the respondents note, however, a second count of capital murder against Harris, based on the victim's murder allegedly in the line of duty, was tried to the jury and was not dismissed until after the State completed its case-in-chief.  *Doc. No. 24* at 67.  Based on the evidence properly presented at trial, the jury was well aware of the victim's status as a law enforcement officer.  Any reference to that status during closing arguments has not been shown to be error, and even if it constituted error, it would have been harmless as it did not "infect the trial with unfairness."  This claim does not entitle Harris to habeas relief.

### 6.    Harris's Exclusion from Critical Proceedings

Harris contends that her exclusion from critical proceedings, including a hearing in which her original appointed attorneys were dismissed, violated her rights to a fair trial and to due process under the Sixth and Fourteenth Amendment.  *Doc. No. 1* at 41-43.  She specifically maintains that she was deprived of her right to be present at any stage of the criminal proceeding critical to its outcome.  *Id.*

The Sixth Amendment guarantees a criminal defendant "the right ... to be confronted with the witnesses against him."  "[E]ven in situations where the defendant is not actually confronting witnesses or evidence against him, [the defendant] has a due process right 'to be

50

present in his own person whenever his presence has a relation, reasonably substantial, to the ful[l]ness of his opportunity to defend against the charge.'" *Kentucky v. Stincer*, 482 U.S. 730, 745 (1987) (quoting *Snyder v. Massachusetts*, 291 U.S. 97, 105-06 (1934)). *See also Rushen v. Spain*, 464 U.S. 114, 117 (1983) ("[T] he right to personal presence at all critical stages of the trial ... [is a] fundamental right[ ] of each criminal defendant.") A defendant's right to be present during criminal proceedings in not absolute, however: "[A] defendant is guaranteed the right to be present" at a particular stage of a criminal proceeding only if that stage "is critical to its outcome," and "his presence would contribute to the fairness of the procedure." *Id*. Thus, a defendant's presence is not constitutionally required "when [his] presence would be useless, or the benefit but a shadow." *Snyder*, 291 U.S. at 106-07 (collecting cases). *See also United States v. Gagnon*, 470 U.S. 522, 526-27 (1985) (identifying the key inquiry as whether the defendant's absence impaired his ability to defend himself against the charges).

Here, the trial court excused Harris's original appointed attorneys following a pretrial hearing on the attorneys' motion for reasonable and adequate compensation for representing Harris as a capital defendant. At the hearing, counsel argued that their compensation for representing Harris was less than their office overhead and requested either that they receive $90 per hour or that they be excused from the case. *Resp'ts Exh. A-Supp. 1* at RR-4-6. The trial judge stated that because he was without authority under Ala. Code § 15-12-21(d) to authorize higher compensation for counsel, he would relieve counsel of their appointment.

*Id*. Harris was not present at this hearing.

On direct appeal, Harris argued that it was error for the trial court to conduct the hearing in which counsel were removed in her absence. *See Harris*, 632 So.2d at 510-12. After noting that a defendant's right to be present at all critical stages of a criminal proceeding derives from the Confrontation Clause of the Sixth Amendment and the Due Process Clause of the Fourteenth Amendment, *see id*. at 511, and finding no evidence that Harris's absence from the hearing was prejudicial, the Alabama Court of Criminal Appeals found no error:

> [I]n the present case, the trial court's decision to allow the appellant's trial counsel to be removed from the case was based on a question of law, the dictates of a statute, a matter concerning which the appellant's presence would be useless. As noted in *Proffitt v. Wainwright*, [685 F.2d 1227 (11th Cir. 1982),] supra, a defendant's right to be present arises from his right to confrontation and, in the present case, no witnesses were involved in this hearing. The appellant has been unable to suggest or demonstrate any possibility of prejudice resulting from her absence. Therefore, we find no error in this matter.

632 So.2d at 512.

As the respondents observe (*Doc. No. 24* at 69), while Harris now asserts she had developed a strong working relationship with her counsel, the trial court's decision to remove the attorneys from the case was based solely on their contention that they could not be adequately compensated under Alabama law. As the Alabama Court of Criminal Appeals found, this was not a matter that Harris's presence could have affected. The Alabama Court of Criminal Appeals' decision rejecting Harris's claim here was not contrary to, or an

unreasonable application of, clearly established precedent, and it was not an unreasonable

determination of the facts in light of the evidence presented.  28 U.S.C. § 2254(d)(1) & (2).

Therefore, Harris is not entitled to habeas relief on this claim.

Harris also contends that her rights to due process and a fair trial were denied because

she was absent from a pretrial proceeding involving the removal of another of her attorneys,

Barry Leavell; "various pretrial motions"; discussions of the testimony of potential state

witnesses; discussions of "information for which she may have been the source"; and

discussions of "various statements allegedly made by her and about her."  *Doc. No. 1* at 42.

Harris raised this argument on direct appeal, and it was rejected by the Alabama Court of

Criminal Appeals, which found in pertinent part:

> [W]e find no error in her absence during these hearings.  The particular matters
> raised during these hearings, which the appellant argues required her presence
> in order to aid her counsel, were discussions of a public trial, evidentiary plans
> of the State, defense motions for the State to produce any statements allegedly
> made by the appellant, a defense motion requesting criminal records on certain
> State's witnesses, and a brief rendition by the State of what it anticipated its
> case and evidence would entail.  Because the trial court ordered the State to
> turn over its entire file on this case to the defense, there is no error in the
> defendant's absence during the State's brief rendition of its evidence, because
> the appellant could have suffered no prejudice.  The other matters involved
> questions of law, involved no witness testimony, and from the discussions
> therein, it is clear that the appellant's presence would not have aided her
> defense.  *See Maund v. State*, [361 So.2d 1144 (Ala. Crim. App. 1978)] supra;
> *People v. Teitelbaum*, 163 Cal.App.2d 184, 329 P.2d 157 (1958), cert. denied,
> 359 U.S. 206, 79 S.Ct. 738, 3 L.Ed.2d 759 (1959) (wherein there was no error
> in the holding of eight conferences in chambers, because in none of these
> proceedings were any matters discussed as to which the defendant could have
> been of any aid to his counsel, and each concerned only questions of law).

As to the hearing on the appellant's motion to produce, from which the

53

State concedes the appellant was absent, the State argues that defense counsel waived the appellant's right to be present, stating that her presence was not necessary to hear the legal arguments.  The record indicates that, prior to beginning the hearing, the trial court asked defense counsel, "Do you waive your client's presence here for this hearing?"  Defense counsel responded, "Yes, Your Honor.  Apparently I'll have to – she's in the Elmore County jail. I did not have time to get her here."  Defense counsel thereafter stated, "Your Honor, I don't think it's necessary for her to be here, to hear legal arguments on this point."  During this hearing, the defense requested the production of certain telephone conversations from the appellant's house to the police department.  The trial court denied this request as to all the conversations, but ordered the State to turn over any exculpatory material contained in those conversations.  The defense also requested the production of tape-recorded statements by the defendant, which request the trial court granted.  The defense also asked for production of any statements, including grand jury testimony, of certain State's witnesses who were not accomplices.  The trial court denied this request as to all statements, but ordered the State to turn over any exculpatory material contained in the witnesses' statements.

We decline to hold, in the present case, that defense counsel could waive the appellant's right to be present. *See Proffitt v. Wainwright*, [685 F.2d 1227 (11th Cir. 1982).]  However, because the hearing involved only questions of law, the appellant's presence would have been needless.  Moreover, in light of the trial court's favorable rulings for the appellant, she was not prejudiced by her absence. *See State v. Iverson*, 187 N.W.2d 1 (N.D.), cert. denied, 404 U.S. 956, 92 S.Ct. 322, 30 L.Ed.2d 273 (1971) (wherein, although the court found error in the defendant's absence from four conferences held in chambers, the court held that the error was harmless, emphasizing that in three of the conferences the defendant obtained favorable evidentiary rulings).

*Harris*, 632 So.2d at 516-17 (footnotes omitted).

The Alabama Court of Criminal Appeals found that the proceedings in question involved only questions of law, so Harris's presence would not have aided her defense, and that any possible error in conducting the proceedings in Harris's absence was harmless because the trial court ordered the State to turn over its entire file on this case to the defense.

54

Harris does not establish how her presence at the proceedings would have been useful in ensuring a more reliable determination in her case, or how her absence affected the outcome.[9] Under the circumstances, the state appellate court could reasonably conclude that Harris's presence at the proceedings would not "contribute to the fairness of the procedure" such that "a fair and just hearing [was] thwarted by [her] absence." *Stincer*, 482 U.S. at 745. The state-court decision rejecting Harris's claim was not contrary to, or an unreasonable application of, clearly established precedent, and it was not an unreasonable determination of the facts in light of the evidence presented. As such, this claim does not entitle Harris to habeas relief.

The state court decision did not specifically address Harris's claim regarding her absence from a pretrial proceeding that involved the removal from her case of attorney Barry

---

[9] In its opinion affirming Harris's conviction and sentence on direct review, the Alabama Supreme Court spoke to the Alabama Court of Criminal Appeals' resolution of this issue:

> Having carefully read and considered the record, together with Harris's 141-page brief, the state's 237-page brief, and Harris's 18-page reply brief, we conclude that the Court of Criminal Appeals correctly resolved the issues discussed in its opinion. We do note, however, the issue on which [Alabama Court of Criminal Appeals] Judge Montiel dissents – whether Harris had an absolute right to be present at "all pretrial proceedings relating to [her] case" (i.e., proceedings involving questions of law, questions of procedure, or questions regarding the removal of Harris's counsel), pursuant to the guarantees of the Confrontation Clause of the Sixth Amendment and the Due Process Clause of the Fifth Amendment of the United States Constitution and because every criminal defendant, particularly a defendant in a capital murder case, has the fundamental right to participate in the preparation of her defense. Suffice it to say, without further discussion, that after thoroughly reviewing the record and the applicable law, we are satisfied that the Court of Criminal Appeals adequately addressed and correctly resolved this issue.

*Ex parte Harris*, 632 So.2d 543, 544 (Ala. 1993).

Leavell.  Leavell was removed solely because he did not have five years of active practice of criminal law, a requirement under § 13A-5-54, Ala. Code 1975, for counsel appointed to represent persons indicted for capital offenses.  *See Resp't's Exh. A-v.1* at R-21-26.  As was the case with Harris's original appointed attorneys (Riggs and ), attorney Leavell's removal was based on a question of law and the dictates of a statute, and it was not a matter that Harris's presence could have affected.  Harris is not entitled to habeas relief based on this claim.

### C.  Claims of Ineffective Assistance of Counsel

A claim of ineffective assistance of counsel must be evaluated against the two-part test announced in *Strickland v. Washington*, 466 U.S. 668 (1984).  First, a petitioner must show that "counsel's representation fell below an objective standard of reasonableness."  *Id*. at 689.  Second, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id*. at 694.

> First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Id*. at 687.

Scrutiny of counsel's performance is "highly deferential," and the court indulges a "strong presumption" that counsel's performance was reasonable. *Chandler v. United States*,

218 F.3d 1305, 1314 (11th Cir. 2000) (internal quotation marks omitted).  Any review of an ineffective assistance of counsel claim is conducted from the perspective of defense counsel based on facts "as they were known to counsel at the time of the representation."  *United States v. Teague*, 953 F.2d 1525, 1535 (11th Cir. 1992).  The court will "avoid second-guessing counsel's performance:  It does not follow that any counsel who takes an approach [the court] would not have chosen is guilty of rendering ineffective assistance."  *Chandler*, 218 F.3d at 1314 (11th Cir. 2000) (internal quotation marks and brackets omitted).

The prejudice prong does not focus only on the outcome; rather, to establish prejudice, the petitioner must show that counsel's deficient representation rendered the result of the trial fundamentally unfair or unreliable.  *See Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993) ("[A]n analysis focusing solely on mere outcome determination, without attention to whether the result of the proceeding was fundamentally unfair or unreliable, is defective.").  "Unreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him."  *Id*. at 372.

Unless a petitioner satisfies the showings required on both prongs of the *Strickland* inquiry, relief should be denied.  *Strickland*, 466 U.S. at 687.  Accordingly, once a court decides that one of the requisite showings has not been made, it need not decide whether the other one has been.  *Id*. at 697; *Duren v. Hopper*, 161 F.3d 655, 660 (11th Cir. 1998) ("if a defendant cannot satisfy the prejudice prong, the court need not address the performance

prong").

Where the state court rules on the merits of an ineffective assistance of counsel claim, this court's § 2254 review under *Strickland* is another step removed from the original analysis, or as the Supreme Court puts it, "doubly deferential." *Burt v. Titlow*, __ U.S. __, __, 134 S.Ct. 10, 13 (2013) (quotation marks and citation omitted); *see Tanzi v. Sec'y, Florida Dep't of Corr.*, 772 F.3d 644, 652 (11th Cir. 2014) (quoting *Burt*).

## 1.    Denial of Continuity in Legal Representation

Harris claims that she was denied the effective assistance of counsel as a result of being denied continuity in her legal representation at trial. *Doc. No. 1* at 21-22. She maintains that she was unable to form a strong bond of trust and confidence with any of her appointed attorneys because inadequate compensation for appointed counsel forced a succession of her attorneys to withdraw from the case.[10] *Id*.

In affirming the trial court's denial of Harris's Rule 32 petition, the Alabama Court of Criminal Appeals found this claim was properly dismissed by the trial court under

---

[10] Harris's original counsel, attorneys Frank Riggs and Tim Halstrom, were appointed to represent her on May 19, 1988. On July 22, 1988, they filed a motion for reasonable and adequate compensation for representing Harris as a capital defendant, or in the alternative to be relieved as counsel. Following a hearing on August 23, 1988, the trial court excused Riggs and Halstrom as Harris's counsel. The court then appointed Pete Yates, Maury Smith, and David Allred to replace Riggs and Halstrom. Those attorneys withdrew and were replaced by John Alley and Barry Leavell. On September 29, 1988 (over nine months before trial), the trial court replaced Alley with attorney Knox Argo. Leavell was later excused because he did not have five years of active practice of criminal law. On March 29, 1989 (over three months before trial), attorney Eric Bowen was also appointed to represent Harris. Bowen and Argo represented Harris at trial.

Ala.R.Crim.P. 32.2(a)(3) because it could have been, but was not, raised at trial.[11]  *Harris*, 947 So.2d at 1095.  The respondents assert that this claim in Harris's habeas petition is therefore procedurally defaulted because the last state court to render an opinion on the claim expressly held it was procedurally defaulted based on Harris's failure to comply with a firmly established state procedural rule.  *Doc. No. 24* at 76-78.  *See Harris v. Reed*, 489 U.S. 255, 264 n.10 (1989); *Atkins v. Singletary*, 965 F.2d 952, 955 (11th Cir. 1992) (citations omitted) ("Federal review of a petitioner's claim is barred by the procedural-default doctrine if the last state court to review the claim states clearly and expressly that its judgment rests on a procedural bar, and that bar provides an adequate and independent state ground for denying relief.").

"[A] petitioner may obtain federal review of a procedurally defaulted claim if he can show both 'cause' for the default and actual 'prejudice' resulting from the default." *Henderson v. Campbell*, 353 F.3d 880, 892 (11th Cir. 2003) (citations omitted).  "Cause" for a procedural default must ordinarily turn on whether the petitioner can show that "some objective factor external to the defense impeded the effort to raise the claim properly in the state court."  *Id*.  "Prejudice," in this context, means "at least a reasonable probability that the result of the proceedings would have been different."  *Id*.

Harris asserts as "cause" for her procedural default the very lack of continuity in her legal representation which she says resulted in all of her trial attorneys' failure to appreciate

---

[11] Rule 32.2(a)(3) provides generally that a Rule 32 petitioner will not be given relief based upon any ground "[w]hich could have been but was not raised at trial."  Ala.R.Crim.P. 32.2(a)(3).

and articulate the deleterious effect of "the revolving door of attorney dismissals, withdrawals and appointments that form the basis of this claim." *Doc. No. 28* at 23. This "revolving door of attorneys," Harris says, constituted "an objective factor external to the defense [that] impeded [her] effort to raise the claim properly in state court." *Id*. Assuming, without finding, that Harris establishes cause for her procedural default, she nevertheless is not entitled to relief on this claim, because she fails to demonstrate specific prejudice that resulted from the lack of continuity in her legal representation. Further, she fails to show that, absent the alleged  discontinuity in her representation, there is a reasonable probability that the result of the proceeding would have been different. *See Strickland*, 466 U.S. at 694. Harris has not demonstrated that she was denied effective assistance of counsel as a result of being denied continuity in her legal representation. Consequently, she is not entitled to habeas relief on this claim.

### 2.     Failure to Obtain Adequate Compensation for Defense

Harris contends that her trial counsel rendered ineffective assistance by failing to argue effectively to obtain adequate compensation for her defense. *Doc. No. 1* at 22-23.

In her § 2254 petition, Harris maintains that her original appointed counsel, Riggs and Halstrom, as well as the two attorneys who later represented her, Eric Bowen and Knox Argo,  were ineffective for failing present successful arguments to secure adequate funding. *Id*. at 23. The respondents correctly observe (*Doc. No. 24* at 27) that Harris's Rule 32 petition presented a claim regarding only the failure of Riggs and Halstrom to obtain

adequate funding.  Thus, the respondents argue that Harris's argument in her § 2254 petition regarding Bowen and Argo is procedurally defaulted.  Because Harris does not attempt to assert cause for this procedural default, this court's consideration is limited to her arguments regarding the failure of Riggs and Halstrom to secure adequate funding.  *See Henderson v. Campbell*, 353 F.3d 880, 892 (11th Cir. 2003).

Regarding Harris's claim that Riggs and Halstrom failed to argue effectively to obtain adequate funding, the Alabama Court of Criminal Appeals stated:

> Harris contends that trial counsel was ineffective at the guilt phase of the trial because, Harris argues, counsel failed to obtain adequate compensation for her defense.
>
> Trial counsel did file a motion seeking "reasonable and adequate compensation for counsel" for representing Harris as a capital defendant.  The trial court denied this motion.  *Harris v. State*, 632 So.2d at 509.  "Trial counsel is not ineffective for having an objection overruled or a motion denied."  *Boyd v. State*, 746 So.2d 364, 402 (Ala.Crim.App. 1999).  Thus, there is no merit to this claim.

*Harris*, 947 So.2d at 1095.

Harris does not show how Riggs and Halstrom could have presented a successful argument to support their motion for "reasonable and adequate compensation for counsel." Therefore, she does not demonstrate that their performance in this regard was deficient and that she was prejudiced by their deficient performance.  *Strickland*, 466 U.S. at 687-94. Moreover, she fails to show what more her counsel could, or would, have done with additional compensation.  Under these facts, this court cannot say that the Alabama Court of Criminal Appeals' decision rejecting Harris's claim was contrary to, or an unreasonable

application of, clearly established precedent or that the state-court decision involved an unreasonable determination of the facts in light of the evidence presented.  28 U.S.C. § 2254(d)(1) & (2).  Consequently, this claim does not entitle her to habeas relief.

### 3.     Failure to Protect Right to Fair and Impartial Jury

Harris maintains that her trial counsel was ineffective for failing to protect her right to a fair and impartial jury.  *Doc. No. 1* at 24-26.  Specifically, she argues that trial counsel (i) failed to submit critical evidence supporting the defense's motion for a change of venue, (ii) failed to secure adequate voir dire, and (iii) failed to effectively argue her *Batson* claim. *Id*.

Failure to support motion for change of venue

Harris contends that her trial counsel rendered ineffective assistance by failing to submit critical evidence supporting her motion for a change of venue.  *Doc. No. 1* at 24. Harris presented this ineffective assistance claim in her Rule 32 petition, and it was denied by the trial court.  She appealed the issue, and the Alabama Court of Criminal Appeals affirmed the trial court's ruling.  In discussing this issue at length, the Alabama Court of Criminal Appeals stated:

> Harris contends that trial counsel was ineffective for failing to protect her right to an impartial jury because, she says, *after filing* a motion for a change of venue based on pretrial publicity, counsel elected not to vigorously pursue the motion and it was denied.
>
> The substantive claim underlying this claim of ineffective assistance of counsel was presented at trial, raised on appeal, and reviewed for error.  This court held on direct appeal that Harris had failed

"to prove that the community was saturated with prejudicial publicity.

"....

"Moreover, the appellant has failed to prove that there existed any actual prejudice against her. The jurors who indicated that they had any knowledge of the case were questioned individually concerning the extent of their knowledge, the source of that knowledge, and the ability to disregard the information and decide the case based upon the facts presented in court. No juror remaining on the venire indicated that he or she could not decide the case based on the facts presented and on the law as instructed by the court. Thus, there was no actual prejudice demonstrated by the appellant resulting from pretrial publicity. *Irvin v. Dowd*, 366 U.S. 717, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961)."

*Harris v. State*, 632 So.2d at 517-18.

In addition to the ruling on direct appeal, which precludes a showing of the prejudice necessary to establish ineffective assistance of counsel, before trial each prospective juror swore that he or she was able to decide Harris's case on the evidence despite any prior knowledge of the case. "The fact that the prospective jurors were not wholly ignorant of the facts and issues in petitioner's case did not establish the actual prejudice necessary for a change of venue." *Heath v. State*, 536 So.2d at 149, citing *Ex Parte Grayson*, 479 So.2d 76, 80 (Ala. 1985); *Lokos v. State*, 434 So.2d 818, 827-828 (Ala.Crim.App. 1982), aff'd, 434 So.2d 831 (Ala.1983). Harris made no showing at her Rule 32 hearing that any juror had been prejudiced against her by pretrial publicity. Thus, the circuit court correctly ruled that Harris failed to meet her burden of proof pursuant to Rule 32.3, Ala.R.Crim.P., because Harris failed to prove any prejudice as required by *Strickland*.

Moreover, the circuit court ruled on the merits that counsel's decision not to vigorously pursue a change of venue was a strategic one. We agree. In his deposition, Bowen, one of Harris's trial attorneys, testified that he filed a motion requesting a change of venue but that upon reflection of the circumstances of the case, decided not to vigorously pursue a change of venue. Bowen provided the following reasons for not vigorously pursuing a change

of venue despite the significant newspaper and television coverage concerning the case.

"The motion was really ... an extremely tough call from my point of view.  The Alabama law is that you transfer to the next county, free of exception.[12]  You're surrounded by Macon, Elmore, Autauga, Lowndes, Crenshaw....    Autauga is seventy-five to eighty percent white....  We really didn't want to do that.  Not that this was really a black-white case, but we felt like as many black females as we could get on the jury, the better off we were.

"... Let's say we might have won a transfer to Macon. But I believe Mr. Isaiah Harris's family was from Macon County....  I just recall that in my mind, one of our decisions on that.  The same thing with Elmore is it was predominantly white, although the black-white ratio was higher in Elmore than Autauga.  Lowndes probably would have been the preferred county.

"But, truthfully, it was hard to get.  If you were to make the motion for change of venue, you were really playing a game of Russian roulette, so to speak. In other words, if you had gotten Autauga, you would probably be in worse shape than you were--... in my opinion, than you were in Montgomery.  If you had gotten Lowndes, you would have been in ... probably a better situation.  But, know, the point you had to make on that is that although we filed that motion--... *I really felt in the back of my mind we had the most racially balanced county that we could get in Montgomery*.

"Now, there was a problem, of course, because this was a Montgomery County deputy sheriff that was killed, and that was always a problem.  But when you get down to whether you want Autauga County as opposed to Montgomery County, you know, I'm not sure I want Autauga County.  *I think I'm more*

---

[12] Harris's trial counsel was correct in this regard:  § 15-2-24, Ala Code 1975, provides that "when a change of venue is authorized, the trial must be removed to the nearest county free from exception, and it can be removed but once."

*inclined to go with Montgomery County because it's a racially balanced county*, you know, roughly 50 percent-50 percent. And so there was a number of things that we thought about and that I thought about in this regard.

"*So we did make the motion. We did go through the motion. We did think that we ought to – But after thinking about it, after halfway thinking about that thing and realizing that we may get sent to Autauga County, it was a scary thought*. It really was a scary thought. It was a tough decision to make.

"Q. [Rule 32 counsel]: So ... you didn't include any of the press coverage–

"A: Right.

"Q: *–because you weren't so sure that you wanted to win the motion?*

"A.... We originally started out, well, we need to do this because it's a deputy sheriff, and it's got a lot of press. But then again, you know, the press that you get from Montgomery, it spills over into some of the other counties, also.

"And then you understand that we're trying this case to win. We've got a racially balanced county, whereas we may end up with a racially imbalanced county detrimental to ... what we're presenting.... It was a tough call. So I think in the middle of that, I got the feeling that I'm really not so sure that I want to go forward with this motion the way I originally presented it.

"In hindsight you think, well ... maybe that was error, but we were trying to win the case.

(Rule 32 hearing, vol. 18, pp. 142-45.)  (Emphasis added.)

Based on counsel's testimony, this court finds that counsel's strategic decision was made after reasonable consideration of options. "'Strategic choices made after thorough investigation of relevant law and facts are virtually unchallengeable.'" *Bui v. State*, 717 So.2d 6, 23 (Ala.Crim.App.

65

1997) (quoting *Lawley*, 512 So.2d 1370, 1372 (Ala.1987)).  We will refrain from using hindsight in evaluating trial counsel's decisions and affirm the circuit court's ruling on the merits.

Based on the above, we hold that the circuit court's ruling was correct.

*Harris*, 947 So.2d at 1095-97.

The record reflects that although Harris's trial counsel filed a motion for change of venue, they made a strategic decision not to pursue the motion vigorously, based on their concern that, if Harris's trial were transferred, there was a distinct possibility it would be transferred to a county with a predominately white jury pool (when counsel hoped to have "as many black females as [they] could get on the jury"), and there was, in any event, also a likelihood of publicity spillover to counties neighboring Montgomery County, which Harris's trial counsel recognized as a "racially balanced" county.  Trial counsel made a reasonable strategic calculation not to vigorously seek a change of venue.  As the Alabama Court of Criminal Appeals noted, "[s]trategic choices made after thorough investigation of relevant law and facts are virtually unchallengeable."  *Bui v. State*, 717 So.2d 6, 23 (Ala.Crim.App. 1997); *see Strickland*, 466 U.S. at 690.  The strategy choice here by Harris's counsel was not "so patently unreasonable that no competent attorney would have chosen it." *Adams v. Wainwright*, 709 F.2d 1443, 1445 (11th Cir. 1983).

In addition, Harris fails to demonstrate that she suffered any prejudice from counsel's alleged error.  While her Rule 32 counsel, in a post-hearing filing, submitted several local newspaper articles covering the murder of Isaiah Harris (*see Resp'ts Exh.Q-Supp. 1* at 23-

52), the newspaper articles were factual and objective in nature and did not contain inflammatory or blatantly prejudicial information regarding defendant Harris. "Newspaper articles alone would not necessitate a change of venue unless it was shown that the articles so affected the general citizenry through the insertion of such sensational, accusational or denunciatory statements, that a fair and impartial trial was impossible." *Thompson v. State*, 581 So.2d 1216, 1233-34 (Ala.Crim.App. 1991) (internal quotation marks omitted). The fact that a case generates widespread publicity does not, in and of itself, warrant a change of venue. *See, e.g., Knight v. Dugger*, 863 F.2d 705, 713-23 (11th Cir. 1988). Further, as noted by the Alabama Court of Criminal Appeals, prospective jurors in Harris's case were asked if they had any knowledge about the case, and those who indicated they had such knowledge were questioned individually; no juror remaining on the venire indicated that he or she could not decide the case based on the evidence presented on law as instructed by the court. *Harris*, 947 So.2d at 1095 (citing *Harris*, 632 So. 2d at 518).

Harris fails to satisfy either the performance or the prejudice prong of *Strickland*. *See* 466 U.S. at 687-94. The state court decision rejecting this claim of ineffective assistance of trial counsel was not contrary to, or an unreasonable application of, clearly established precedent, and it was not an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d)(1) & (2). Consequently, this claim does not entitle Harris to habeas relief.

<u>Failure to secure adequate voir dire</u>

67

Harris next contends that her trial counsel rendered ineffective assistance by failing to secure adequate voir dire of prospective jurors. *Doc. No. 1* at 24. She maintains that her counsel should have secured questioning of the prospective jurors about whether they had relatives who worked in law enforcement and about their views on adultery. *Id*

Harris asserted this ineffective assistance claim in her Rule 32 petition, and it was denied by the trial court. The Alabama Court of Criminal Appeals affirmed the trial court, addressing this claim as follows:

> Harris contends that trial counsel was ineffective at the guilt phase of the trial because, Harris argues, counsel failed to conduct an adequate voir dire of the jury. Harris argues that four jurors – B.E., E.B., M.K.L., and S.M. – "were closely related to individuals who worked in law enforcement, but were not asked if that would bias them where the victim was a law enforcement officer." (Harris's brief on appeal at p. 62.) Additionally, Harris argues, "none of the jurors were questioned about their views on adultery, a sensitive issue on which the State was sure to focus – and one that clearly affected the sentencing court.... Harris had a right to have both issues explored." (Harris's brief on appeal at p. 62.)

> The circuit court ruled that "Harris failed to present any evidence in support of this claim." (Rule 32 Record,vol. 9, page 1705.) We agree. This claim of ineffectiveness amounts to nothing more than a bare allegation, unsupported by any factual basis; accordingly, it fails to satisfy either the burden-of-proof requirements of Rule 32.3, Ala. R.Crim. P., or the specificity requirements of Rule 32.6(b), Ala.R.Crim. P. Additionally the circuit court ruled on the merits finding that "the record refutes any claim of deficient performance on the part of trial counsel. The voir dire of the jury panel was conducted by the trial court.... Defense counsel submitted, however, 'proposed voir dire questions,' covering the subjects Harris sets forth in the claim." (Rule 32 Record vol. 9, pp. 1705-06.) The record on direct appeal supports the circuit court's ruling. The record on direct appeal reflects that counsel submitted two separate sets of written proposed voir dire questions to the trial court. The written questions included a question to the jury panel regarding Harris's adulterous relationship with Lorenzo McCarter. "Trial counsel is not

ineffective for having an objection overruled or a motion denied." *Boyd v. State,* 746 So.2d 364, 402 (Ala.Crim.App. 1999).

Thus, Harris has not shown how her trial counsel's conduct was deficient or how the outcome of her trial would have been different had her trial counsel performed differently regarding this claim. *See, e.g., Williams v. State*, 782 So.2d 811, 825 (Ala.Crim.App. 2000); *Brooks v. State*, 695 So.2d 176, 182 (Ala.Crim.App. 1996). Therefore, Harris has failed to state a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Because Harris failed to state a claim upon which relief could be granted, denial of this claim was appropriate.

*Harris*, 947 So.2d at 1097-98.

The Sixth Amendment and principles of due process guarantee a criminal defendant in state court an "impartial jury." *Ristaino v. Ross*, 424 U.S. 589, 595 n.6 (1976) (citations omitted). The Supreme Court has stressed that a trial court is granted wide discretion in conducting voir dire in the area of pretrial publicity and in other areas of inquiry that might tend to show juror bias. *Mu'min v. Virginia*, 500 U.S. 415, 427 (1991). "Voir dire examination serves the dual purposes of enabling the court to select an impartial jury and assisting counsel in exercising peremptory challenges." *Id*. at 431.

Counsel is granted deference when conducting voir dire. *Hughes v. United States*, 258 F.3d 453, 457 (6th Cir. 2001). "An attorney's actions during voir dire are considered to be matters of trial strategy.... A strategic decision cannot be the basis for a claim of ineffective assistance unless counsel's decision is shown to be so ill-chosen that it permeates the entire trial with obvious unfairness." *Id*.

Here, the record shows that Harris's trial counsel submitted requested voir dire

questions that included one inquiring if "a member of your family ever worked as a volunteer or employee in a law enforcement agency, prison, jail, correctional institution or mental health facility on the local, state, or federal level," and another inquiring if each prospective juror would be affected by evidence showing that Harris had an adulterous affair. *Resp'ts Exh.A-Supp. 1* at 8-11. Although the trial court rejected these requested questions, Harris's trial counsel, by submitting these questions, attempted to put these issues before prospective jurors. In the state courts, Harris failed to allege anything further that her trial counsel could have done in this regard. She does not satisfy either the performance or prejudice prong of *Strickland*. 466 U.S. at 687-94. The state court decision rejecting her claim was not contrary to, or an unreasonable application of, clearly established precedent, and it was not an unreasonable determination of the facts in light of the evidence presented. Consequently, this claim does not entitle her to habeas relief.

### Counsel's argument of *Batson* claim

Harris contends that her trial counsel rendered ineffective assistance by failing to argue her *Batson* claim effectively. *Doc. No. 1* at 25-26.

Harris maintains that in arguing her *Batson* claim, her trial counsel should have pointed to other relevant factors (beyond the mere number of strikes the prosecutor used against black venire members), which Harris says would have supported an inference of racial discrimination in the prosecutor's peremptory challenges. *Id*. In this regard, she argues that her trial counsel should have cited the history of the Montgomery County District

Attorney's Office's use of peremptory challenges to discriminate against black jurors. *Id*. While the history of discrimination by the district attorney's office was not argued to the trial court in the first instance, the Alabama Court of Criminal Appeals addressed this history in its opinion on Harris's direct appeal. *See Harris*, 632 So.2d at 513. There, the appellate court found that this history, standing alone, was insufficient to establish a prima facie *Batson* case in any given case, implicitly finding that because there had been no showing of other facts supporting an inference of discrimination in Harris's case, this history was insufficient to establish a prima facie *Batson* case in Harris's trial. *Id*.

Harris presented her claim that her trial counsel failed to argue her *Batson* claim effectively in her Rule 32 petition, asserting in addition to the prosecutor's alleged pattern of strikes against black jurors in her case that her trial counsel should have cited the prosecutor's above-mentioned history of racial discrimination in using peremptory challenges and that her trial counsel also performed deficiently by allowing the prosecutor to "misstate" the number of blacks on the jury in responding to defense counsel's *Batson* motion. The trial court denied relief on this claim in the Rule 32 petition. *Resp'ts Exh. Q-v.9* at 1706-07.

Harris pursued this claim when appealing the denial of her Rule 32 petition, and the Alabama Court of Criminal Appeals held that she had not proven that her trial counsel's conduct in arguing the *Batson* claim was deficient and that, therefore, she had failed to establish ineffective assistance of counsel under *Strickland*. *Harris*, 947 So.2d at 1099-1100. In pertinent part, the appellate court noted:

71

> [O]n direct appeal, we considered whether the history of discriminatory practices by the Montgomery County District Attorney's Office in striking a jury was a factor in establishing a prima facie case of racial discrimination in Harris's case and found that it was not. *See Harris v. State*, 632 So.2d 503, 513 (Ala.Crim.App. 1992).

*Id*.  In addition, the appellate court stated:

> Harris ... claims that trial counsel allowed the prosecutor to misstate the numbers necessary to assess whether a pattern existed of strikes based on race.
>
> ....
>
> As to this argument the circuit court ruled as follows:
>
>> "Harris additionally contends that the trial counsel were ineffective for allowing the prosecutor to 'misstate' the number of blacks on the jury....  This claim is denied ...because the number of blacks on the jury – as represented by the prosecutor, the trial court, and the defense counsel-was correct....  The following jury members, including the alternate, were African-American:  E.T., J.C., B.E., S.M., A.T., and P.C.  Every one of these jurors is denoted as being black on petitioner's exhibits 44 and 47.  Moreover, petitioner's exhibit 48 – Mr. Argo's [defense counsel] notes from the 'jury selection process'– also indicates that B.E. was African-American.  The Court credits the perceptions and observations of trial counsel, the trial judge, and the District Attorney – each of whom had substantial interest in observing the racial makeup of the jury."
>
> (Rule 32 record, vol. 9 at p. 1707.)
>
> We agree with the circuit court's ruling[.]...  [T]he record ... supports the circuit court's findings that jurors E.T., J.C., B.E., S.M., A.T., and P.C., are black.

*Id*. at 1098-99.

Although Harris's trial counsel, in support of the *Batson* motion, only pointed to the

number of strikes the prosecutor used against potential jurors who were black as evidence

giving rise to an inference of racial discrimination, Harris does not demonstrate that a prima facie *Batson* case would have been established if her counsel had sought to bring to the trial court's attention other factors allegedly supporting an inference of discrimination.  In other words, she fails to show that, had counsel pursued the matter she now raises, the outcome of the proceeding would have been different.  *Strickland*, 466 U.S. at 694.  Accordingly, this court finds that the state court decision was a reasonable determination of the facts in light of the evidence presented, *see* 28 U.S.C. § 2254(d)(2), and that the decision was neither contrary to, nor an unreasonable application of *Strickland*, *see* 28 U.S.C. § 2254(d)(1). Harris is not entitled to habeas relief based on this claim.

### 4.    Failure to Develop and Execute Adequate Defense Strategy

Harris argues that her trial counsel failed to develop and execute an adequate defense strategy by (i) failing to investigate her domestic abuse history, (ii) failing to show that co-defendant Lorenzo McCarter had an independent motive to kill Isaiah Harris, and (iii) failing to impeach key prosecution witnesses.  *Doc. No. 1* at 27-30.

<u>Failure to investigate domestic abuse history</u>

In her Rule 32 petition, Harris claimed that her trial counsel rendered ineffective assistance by failing to investigate her domestic abuse history.  *Doc. No. 1* at 27-29.  In this regard, she argued that her counsel's interviews with her and her family were perfunctory and that counsel did not follow up on evidence of abuse or other evidence to find out what effect that evidence might have had on her mental state or how it would affect the State's

characterization of her as the mastermind behind her husband's murder or how it could explain her behavior on the night of the murder. *See Harris*, 947 So.2d at 1100.

During proceedings on Harris's Rule 32 petition, both of her trial attorneys, Eric Bowen and Knox Argo, testified that they had information before trial about Harris's abuse and had discussed a battered-spouse defense with her, but decided against pursuing such a defense largely based on Harris's own directive not to portray her as a battered spouse because she insisted that such a portrayal would not be accurate. *See Resp'ts Exh. Q-v.18 (Bowen depo.)* at 15-17, 27-28, 101-02; *Resp'ts Exh. Q-v.15* at RR-114-19. Further, in discussions with her counsel, Harris consistently denied any involvement in the murder of her husband. *See, e.g., Resp'ts Exh. Q-v.18 (Bowen depo.)* at 17; *Resp'ts Exh. Q-v.15* at RR-142. Thus, trial counsel presented a defense of factual innocence. *See Resp'ts Exh. Q-v.18 (Bowen depo.)* at 15-17, 25; *Resp'ts Exh. Q-v.15* at RR-142. The defense theory was that Harris was innocent and that her implication in the crime by others was a frame-up so that her accusers would try to work out a deal with prosecutors to save their own lives. *Resp'ts Exh. Q-v.18 (Bowen depo.)* at 24-25. Because it would have been inconsistent to place evidence before the jury attempting to justify Harris's killing of her husband when her defense was that she played no part in the murder, her counsel made a strategic decision not to pursue a battered-spouse defense. *Resp'ts Exh. Q-v.18 (Bowen depo)* at 28-29; *Resp'ts Exh. Q-v.15* at RR-16. Part of Harris's counsel's concern was that evidence of abuse of Harris by the victim would constitute evidence of her motive for killing the victim. *Resp'ts*

74

*Exh. Q-v.18 (Bowen depo)* at 30; *Resp'ts Exh. Q-v.15* at RR-119, 143.  Both the trial court and the Alabama Court of Criminal Appeals found that the decision by counsel not to pursue a battered-spouse defense was reasonable trial strategy and that Harris had failed to establish counsel's ineffective assistance under *Strickland* in developing and executing a defense strategy.  *See id*. at 1708; *Harris* 947 So.2d at 1100-01.

As the respondents observe (*Doc. No. 24* at 35), to the extent that Harris suggests that evidence of domestic abuse along with her "resulting psychological deficits" could have mitigated her culpability for the killing of her husband (*Doc. No. 1* at 27-28), presentation of such evidence would nevertheless have been inconsistent with her trial strategy of denying any participation in the murder.  To the extent that Harris suggests that domestic abuse evidence might have been introduced to explain her "inappropriately calm" emotional state after her husband's death (*Doc. No. 1* at 28-29), she does not establish that such evidence would have been admissible for this purpose or argue convincingly that if domestic abuse were admitted for this purpose, it was reasonably likely to affect the outcome of the proceedings.  Also, counsel could reasonably have chosen to eschew presentation of such evidence out of concern that it would point to a motive for Harris to kill the victim.

Again, strategic choices of counsel made after thorough investigation of the law and facts relevant to plausible options are "virtually unchallengeable."  *Strickland*, 466 U.S. at 690.  "Even if in retrospect the strategy appears to have been wrong, the decision will be held ineffective only if it was so patently unreasonable that no competent attorney would have

chosen it." *Adams v. Wainwright*, 709 F.2d 1443, 1445 (11ᵗʰ Cir. 1983).  *See also, e.g.,*

*Dingle v. Secretary for Dept. of Corrections*, 480 F.3d 1092, 1099 (11ᵗʰ Cir. 2007).

> [A] court must not second-guess counsel's strategy.  *Waters [v. Thomas]*, 46 F.3d [1506,] at 1518-19 [(11ᵗʰ Cir. 1995)] (en banc).  By "strategy," we mean no more than this concept:  trial counsel's course of conduct, that was neither directly prohibited by law nor directly required by law, for obtaining a favorable result for his client.  For example, calling some witnesses and not others is "the epitome of a strategic decision."  *Id*. at 1512 (en banc); *see also id.* at 1518-19 (en banc); *Felker v. Thomas*, 52 F.3d 907, 912 (11ᵗʰ Cir. 1995) (whether to pursue residual doubt or another defense is strategy left to counsel, which court must not second-guess); *Stanley v. Zant*, 697 F.2d 955, 964 (11ᵗʰ Cir. 1983) (stating that reliance on line of defense to exclusion of others is matter of strategy).

*Chandler*, 218 F.3d at 1314 n.14.

Harris fails to demonstrate deficient performance by her counsel.  Further, she fails

to show that, had counsel pursued the matter she now raises, the outcome of the proceeding

would have been different.  *Strickland*, 466 U.S. at 694.  Accordingly, this court finds that

the state court decision was a reasonable determination of the facts in light of the evidence

presented, *see* 28 U.S.C. § 2254(d)(2), and that the decision was neither contrary to, nor an

unreasonable application of *Strickland*, *see* 28 U.S.C. § 2254(d)(1).  Harris is not entitled to

habeas relief based on this claim.

<u>McCarter's independent motive to kill Isaiah Harris</u>

Harris contends that her trial counsel rendered ineffective assistance by failing to

attempt to demonstrate that co-defendant Lorenzo McCarter had an independent motive to

kill Isaiah Harris, leaving the State to argue that McCarter acted only because Harris asked

him to. *Doc*. No. 1 at 29. Specifically, Harris maintains that her trial counsel was aware that McCarter had told Harris he would make her life a "nightmare" if she tried to break off their relationship. *Id*. At the Rule 32 hearing, Harris did not testify regarding this alleged statement by McCarter, and she did not present any testimony from McCarter regarding the statement. *See Resp't Exhs. Q-v.15-v.17* at RR-1-446. Harris's Rule 32 counsel did not question her trial counsel specifically about McCarter's alleged statement. Because Harris presented no evidence establishing that McCarter had indeed made the statement, both the trial court and the Alabama Court of Criminal Appeals found that she had failed to demonstrate any prejudice under *Strickland*. *Harris*, 947 So. 2d at 1100. The state court decision rejecting Harris's claim was not contrary to or an unreasonable application of *Strickland*, and it was not an unreasonable determination of the facts in light of the evidence presented. Consequently, this claim does not entitle Harris to habeas relief.

<u>Impeachment of key State witnesses</u>

Harris cursorily asserts that her trial counsel rendered ineffective assistance by failing to impeach Lorenzo McCarter on certain issues, such as McCarter's statement that he knew the victim merely through a card game (when he also knew the victim from jail), his plea agreement with the State, his alcoholism and marijuana use, his tendency toward blackouts, and his criminal conviction. *Doc. No. 1* at 29-30. She further faults her trial counsel for failing to cross-examine Santina Jenkins (a member of the Montgomery County Sheriff's Department), who worked with the victim and was therefore possibly biased toward the

prosecution.  *Id*.  She raised these claims in her Rule 32 petition (also cursorily),[13] and the trial court held that she failed to meet her burden of proof as to these claims.  *See Resp'ts Exh. Q-v.9* at 1710.  The trial court found that because she failed to come forward with any witnesses or evidence in support of these claims, Harris did not demonstrate prejudice as required by *Strickand*.  *Id*.  The Alabama Court of Criminal Appeals held that the trial court's ruling in this regard was correct.  *Harris*, 947 So.2d at 1100-11.  Harris fails to show that had trial counsel pursued these matters, the outcome of the proceeding would have been different.  *Strickland*, 466 U.S. at 694.  Accordingly, this court finds that the state court decision here was a reasonable determination of the facts in light of the evidence presented and that the decision was neither contrary to, nor an unreasonable application of, clearly established federal law.  Harris is not entitled to habeas relief based on this claim.

### 5.    Failure to Challenge State Misconduct

Harris contends that her trial counsel rendered ineffective assistance by failing to challenge various instances of State misconduct during her trial.  *Doc. No. 1* at 30-32.

<u>Presence of excessive number of sheriff's officers at trial</u>

Harris first asserts that her trial counsel should have objected to the excessive number of uniformed sheriff's officers in the courtroom during her trial in light of the fact that the victim had been a member of the Sheriff's Department, and that counsel also should have objected to the interaction between sheriff's deputies and jurors, in particular the sheriff's

---

[13] In her Rule 32 petition, Harris did little more than assert these claims without elaboration.  *See Resp'ts Exh. Q-v.6* at 1061-62.

deputies' escorting of jurors from a hotel to court and accompanying of jurors during recesses in the trial. *Doc. No. 1* at 30.

Harris's trial counsel did raise such an objection. *Resp'ts Exh. A-v.2* at R-244-45. The objection was overruled by the trial court, and Harris's appellate counsel pursued the claim on direct appeal. The Alabama Court of Criminal Appeals' consideration of the claim is discussed above in Part II.B.2 of this Recommendation. As noted, the Alabama Court of Criminal Appeals found no indication of any prejudice to Harris and denied relief on the claim. *See Harris*, 632 So.2d at 518-19.

In his Rule 32 petition, Harris recast the claim as an allegation of ineffective assistance of counsel. In denying relief on the claim of ineffective assistance, the trial court noted that, Harris's allegation notwithstanding, the underlying substantive claim had in fact been raised by Harris's trial counsel and pursued on direct appeal and that, in any event, Harris had failed to demonstrate that there was, as she alleged, an excessive number of uniformed officers present at trial. *See Resp't Exh. Q-v.9* at 1709.

Harris pursued her ineffective assistance claim on appeal from the denial of her Rule 32 petition. After noting that the merits of Harris's underlying argument had already been rejected on direct appeal, the Alabama Court of Criminal Appeals denied relief on the ineffective assistance claim:

> "Trial counsel is not ineffective for having an objection overruled or a motion denied." *Boyd v. State*, 746 So.2d 364, 402 (Ala.Crim.App. 1999).

> Thus, Harris has not alleged how her trial counsel's conduct was

79

deficient or how the outcome of her trial would have been different had her trial counsel performed differently regarding this claim. See, e.g., *Williams v. State*, 782 So.2d 811, 825 (Ala.Crim.App. 2000); *Brooks v. State*, 695 So.2d 176, 182 (Ala.Crim.App. 1996). Therefore, Harris has failed to state a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Because Harris failed to state a claim upon which relief could be granted, denial of this claim was appropriate.

*Harris*, 947 So.2d at 1101-02.

The state court decision rejecting Harris's claim was not contrary to or an unreasonable application of *Strickland*, and it was not an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d)(1) & (2). Consequently, this claim does not entitle Harris to habeas relief.

### Testimony of victim's sister and presence at prosecution table

Harris contends that her trial counsel was ineffective for failing to object to the testimony of victim Isaiah Harris's sister, which she maintains was offered primarily to engender sympathy for the victim's family and create bias against the defendant. *Doc. No. 1* at 30. She also maintains that trial counsel should have objected to the presence of the victim's sister as the prosecution table during the trial. *Id.*

Harris raised this claim in her Rule 32 petition, and it was denied by the trial court, which ruled:

> Harris failed to present any evidence in support of [this] claim[ ] and has, therefore, failed to meet her burden of proof. The claim[ ] [is] additionally dismissed for failure to comply with Rule 32.6(b). Moreover, the underlying issues were rejected on direct appeal. *See Harris*, 632 So.2d 525. The claim[ ] [is] denied.

*Resp'ts Exh. Q-v.9* at 1709-10.

Harris appealed this ruling, and it was addressed by the Alabama Court of Criminal

Appeals:

> The record supports the circuit court's ruling that this claim is unsupported by any factual basis; accordingly, it fails to satisfy either the burden of proof requirements of Rule 32.3, Ala.R.Crim.P., or the specificity requirements of Rule 32.6(b), Ala.R.Crim.P.[14]
>
> Moreover, the substantive issue underlying this claim was presented at trial, was raised on appeal, and has been reviewed for error. On direct appeal, we ruled that "the presence of the victim's family and evidence of victim impact did not constitute error." *Harris v. State*, 632 So.2d at 525.
>
> Thus, Harris has not alleged how her trial counsel's conduct was deficient or how the outcome of her trial would have been different had her trial counsel performed differently regarding this claim. See, e.g., *Williams v. State*, 782 So.2d 811, 825 (Ala.Crim.App. 2000); *Brooks v. State*, 695 So.2d 176, 182 (Ala.Crim.App. 1996). Therefore, Harris has failed to state a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Because Harris failed to state a claim upon which relief could be granted, denial of this claim was appropriate.

*Harris*, 947 So.2d at 1102-03.

Harris does not specify the portions of testimony by the victim's sister that were

---

[14] Rule 32.3 of the Alabama Rules of Criminal Procedure states, in pertinent part, that "[t]he petitioner shall have the burden of pleading and proving by a preponderance of the evidence the facts necessary to entitle the petitioner to relief." Ala.R.Crim.P. 32.3. Rule 32.6(b) provides:

> The petition must contain a clear and specific statement of the grounds upon which relief is sought, including full disclosure of the factual basis of those grounds. A bare allegation that a constitutional right has been violated and mere conclusions of law shall not be sufficient to warrant any further proceedings.

Ala.R.Crim.P. 32.6(b).

unduly prejudicial.  Further, § 15-14-55, Ala. Code 1975, permits a victim's family member to sit at the table for the prosecution at trial.  *See Harris*, 632 So.2d at 525.  Harris does not cite any authority holding that this statute is unconstitutional.  Consequently, Harris does not show that the state court decision rejecting this claim was contrary to or involved an unreasonable application of *Strickland*, or that it was an unreasonable determination of the facts in light of the evidence presented.  28 U.S.C. § 2254(d)(1) & (2).  This claim does not entitle her to habeas relief.

Prosecutor's reference to "breaking God's law"

Harris contends that her trial counsel was ineffective for failing to object to the prosecutor's reference to her "breaking God's law."  *Doc. No. 1* at 31.

Harris raised this claim in her Rule 32 petition.  In response to the claim, the trial court ruled:

> Harris presented no evidence or argument in support of this claim.  In her proposed findings, she merely sets forth the claim as it appears in the amended petition.  Moreover, the allegedly improper remark was not made during argument, but was part of a question asked by the prosecutor. The question was not improper.

*Resp'ts Exh. Q-v.9* at 1711.

Harris appealed this ruling, and it was discussed by the Alabama Court of Criminal Appeals, which agreed with the trial court:

> During the guilt phase of the trial the defense called Hyram Knight as a character witness for Harris.  Mr. Knight testified on direct examination that Harris was "a good churchgoer ... [and] an all 'round good member of the church" and that she had a good reputation in the community for truth and

82

honesty.  (Direct Appeal Record vol. 4, p. 689.)  On cross-examination the following exchange occurred:

> "Q.  [by the prosecutor]:  Mr. Knight, you did not know of her affair while she was married to Isaiah Harris?
>
> "A.  No.
>
> "Q.  Would that change your opinion, if she was a good member of your church?
>
> "A.  No, it wouldn't.
>
> "Q.  It wouldn't matter to you that she was breaking God's law?
>
> "A.  (Witness shakes head from side to side.)
>
> "Ms. Brooks [the prosecutor]:  Thank you.
>
> "Mr. Argo [defense attorney]:  That's all. Thank you, Mr. Knight."

(Direct Appeal Record vol. 4, pp. 689-90.)

Harris presented nothing at the Rule 32 hearing suggesting deficient performance or prejudice in trial counsel's failure to object to the above exchange.  Thus, the record supports the circuit court's ruling that this claim is unsupported by any factual basis; accordingly, it fails to satisfy either the burden of proof requirements of Rule 32.3, Ala. R.Crim. P., or the specificity requirements of Rule 32.6(b), Ala. R.Crim. P.

Thus, Harris has not alleged how her trial counsel's conduct was deficient or how the outcome of her trial would have been different had her trial counsel performed differently regarding this claim.  See, e.g., *Williams v. State*, 782 So.2d 811, 825 (Ala.Crim.App. 2000); *Brooks v. State*, 695 So.2d 176, 182 (Ala.Crim.App.1996).  Therefore, Harris has failed to state a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), as to this claim.  The circuit court's ruling was correct.

*Harris*, 947 So.2d at 1104-05.

The prosecutor's isolated question to Harris's character witness, who had described Harris as a good churchgoer and good all-around member of the church, cannot be said to have "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974). Thus, Harris fails to show that the state court decision rejecting this claim of ineffective assistance of counsel was contrary to or involved an unreasonable application of *Strickland*, or that it was an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d)(1) & (2). This claim does not entitle her to habeas relief.

<u>Statements by prosecutor during closing arguments</u>

Harris contends that her trial counsel rendered ineffective assistance by failing do object to what she says were various false statements about the testimony and interests of witnesses made by the prosecutor during closing arguments. *Doc. No. 1* at 31-32. In this regard, she maintains her counsel should have objected to the following statements, which she says were misleading and improper:

- The prosecutor's statement that Freddie Patterson had "nothing to gain" by testifying, despite the fact that he had charges pending against him when he was asked to testify.

- The prosecutor's description of Alonzo Trimble as having nothing to gain by testifying, despite the fact he was on probation when he became involved in the case.

- The prosecutor's statement that Trimble had not changed his story at all about an alleged phone call made to him by Harris,

when he gave a version of that story in chambers that was substantially different from the one he gave in open court.

- The prosecutor's statement that there was no evidence Lorenzo McCarter had a criminal record, when McCarter had prior convictions and arrests.

- The prosecutor's statement that McCarter would "have his day in court" when McCarter actually had a plea agreement with the State that spared him from an adversarial proceeding.

- The prosecutor's statement that Harris moved out of the house with her in-laws in order to carry on an affair with McCarter, when she had never lived in a house with her in-laws but rather merely in one they owned.

- The prosecutor's statement that Harris wanted to kill her husband because he was getting a car loan.

- The prosecutor's statement that when a police sergeant called Harris to report that her husband had not reported to work, she sounded as if she had been drinking.

*Id*. at 31.

Although Harris's trial counsel did not object to any of the above-listed prosecutorial remarks, her appellate counsel raised substantive claims as to each of these remarks on direct appeal. Because Harris's original sentence of death had not been vacated at the time, the Alabama Court of Criminal Appeals addressed each claim under the plain error standard of review. The Alabama Court of Criminal Appeals' consideration of these remarks (as substantive claims) is discussed above in Part II.B.5 of this Recommendation. As noted, the Alabama Court of Criminal Appeals found that the challenged remarks were either legitimate inferences from the evidence or legitimate replies-in-kind to arguments by defense counsel,

and that if any remark were improper, the error was harmless to Harris.  *Harris*, 632 So.2d at 531-33.

In her Rule 32 petition, Harris recast each substantive claim regarding the prosecutor's remarks as a claim of ineffective assistance of trial counsel, alleging that trial counsel performed deficiently by failing to object to the remark.  In denying relief on each ineffective assistance claim, the trial court relied on the Alabama Court of Criminal Appeals' ruling on direct appeal that each prosecutorial remark was proper or non-prejudicial.  *Resp'ts Exh. Q-v.9* at 1711-13.  Both of Harris's trial attorneys testified that they chose to exercise caution in making objections during closing argument, as they were unlikely to be sustained.  *Resp'ts Exh. Q-v.18 (Bowen depo.)* at 32; *Resp'ts Exh. Q-v.15.* at RR-134, RR-144-45.  Attorney Bowen opined that too many unsuccessful objections tended to "irritate the jury."  *Resp'ts Exh. Q-v.18 (Bowen depo.)* at 32.

On appeal from the denial of Harris's Rule 32 petition, the Alabama Court of Criminal Appeals affirmed the trial court's ruling, finding as to each prosecutorial remark that Harris had presented nothing to establish deficient performance or prejudice in trial counsel's failure to object to the prosecutor's remarks.  *Harris*, 947 So.2d at 1105-09.  The Alabama Court of Criminal Appeals also noted that, on direct appeal, it had already found each prosecutorial remark was proper or non-prejudicial.  *Id.*  In Part II.B.5 of this Recommendation, this court has determined that the Alabama Court of Criminal Appeals' merit decisions rejecting Harris's substantive claims as to the prosecutor's remarks were not contrary to, or an

unreasonable application of, clearly established precedent, and they were not unreasonable determinations of the facts in light of the evidence presented.  28 U.S.C. § 2254(d)(1) & (2). Fairly considered, the challenged prosecutorial remarks were either legitimate inferences from the evidence or legitimate replies-in-kind to arguments by defense counsel, and if any remark was arguably improper, the error was harmless to Harris.  No remark by the prosecutor "so infected the trial with unfairness as to make the resulting conviction a denial of due process."  *Donnelly*, 416 U.S. at 643.

Because (as previously discussed), Harris fails to establish that any of the prosecutorial remarks was improper, her trial counsel was not ineffective for failing to object to the remarks.  Further (as also previously discussed), because none of challenged remarks was sufficiently misleading or egregious as to require a finding of substantial prejudice, Harris fails to demonstrate the resulting prejudice required to prevail on a claim of ineffective assistance of counsel.  Thus, Harris fails to show that the state court decision rejecting her claims of ineffective assistance of counsel was contrary to or involved an unreasonable application of *Strickland*, or that it was an unreasonable determination of the facts in light of the evidence presented.  28 U.S.C. § 2254(d)(1) & (2).  Consequently, she is not entitled to habeas relief based on this claim.

### 6.    Cumulative Effect of Counsels' Errors

Harris contends that the cumulative effect of her trial counsels' errors constituted ineffective assistance of counsel, denying her a fair trial.  *Doc. No. 1* at  32-33.

It appears that Harris presented this claim in her amended Rule 32 petition, where she asserted, before listing and arguing her individual claims of ineffective assistance of counsel, that:

> Trial counsel's ineffectiveness during the guilt/innocence phase , including but not limited to the following acts, omissions and failures, individually and collectively, resulted in prejudice to Mrs. Harris and denial of her right to a fair trial.

*Resp'ts Exh. Q-v.6* at 1052.  Later in her amended Rule 32 petition, after she had listed and argued her individual claims of ineffective assistance of counsel, Harris maintained that:

> The above enunciated deficiencies of trial and appellate counsel contributed to cumulative error in that the deficiencies individually and collectively violated Mrs. Harris's rights under the Fifth, Sixth, Eighth and Fourteenth Amendments of the United States Constitution and Article I, Sections One, Six, Eleven and Fifteen of the Alabama Constitution.

*Resp'ts Exh. Q-v.6* at 1086.

When, on appeal from the denial of her Rule 32 petition, Harris pursued a claim that all of trial counsel's errors, in the aggregate, amounted to ineffective assistance of counsel entitling her to a new trial, the Alabama Court of Criminal Appeals found that the issue had not been presented to the trial court and was not properly before the court for appellate review.  *Harris*, 947 So.2d at 1112.  However, the appellate court went on to hold that even if the claim were properly before the court for review, it did not entitle Harris to any relief; the court stated:

> """[E]ffectiveness of counsel does not lend itself to measurement by picking through the transcript and counting the places where objections might be made.'" *Stringfellow v. State*, 485 So.2d 1238, 1243 (Ala.Cr.App. 1986).

"Even though there were several instances where counsel could have objected, 'that does not automatically mean that the [appellant] did not receive an adequate defense in the context of the constitutional right to counsel.' *Ex parte Lawley*, 512 So.2d 1370, 1373 (Ala. 1987)." *O'Neil v. State*, 605 So.2d 1247, 1250 (Ala.Cr.App. 1992). As this Court observed in *Graham v. State*, 593 So.2d 162, 166 (Ala.Cr.App. 1991):

> """The lawyer whose performance the appellant now attacks zealously and vigorously defended the appellant. No particular decision to object or not object, even if it is a bad decision, is in itself proof that counsel's performance fell below acceptable professional standards.""""

*DeBruce v. State*, 890 So.2d 1068, 1090 (Ala.Crim.App. 2003) (quoting *Daniels v. State*, 650 So.2d 544, 555 (Ala.Crim.App. 1994)).

*Harris*, 947 So.2d at 1112-13.

"To establish cumulative error, each alleged incident must constitute error in itself, though not necessarily so great as to warrant reversal." *United States v. Murray*, 154 Fed. App'x 740, 745 (11th Cir. 2005) (citing *United States v. Preciado-Cordobas*, 981 F.2d 1206, 1215 n.8 (11th Cir. 1993)). Stated differently:

> Cumulative error necessarily depends upon the finding that constitutional errors occurred during trial and that, although each individual error considered in isolation was no more than harmless error, collectively the errors are so prejudicial that the outcome of the penalty phase is not reliable. A cumulative error argument is actually no more than an extended harmless error analysis. Consequently, cumulative error is not an independent ground for relief separate from the underlying constitutional errors, such as trial court error, prosecutorial misconduct, invalid jury instructions, or ineffective assistance of counsel.

*Mann v. Moore*, 2006 WL 1151865, at *3 (M.D. Fla. Apr. 28, 2006). This court has reviewed the record in this case and finds no constitutional errors arising from deficiencies

89

of trial counsel, either standing alone or combined, that deprived Harris of a fundamentally

fair adjudication in the state courts.[15]

---

[15] Appropriate to Harris's claim here are observations by the United States District Court for the Northern District of Florida in *Mitchell v. Crews*, 2014 WL 3720829 (N.D. Fla. Jul. 28, 2014), where that court, addressing a habeas petitioner's claim of cumulative error by counsel, stated:

> This court need not determine whether, under the current state of Supreme Court precedent, cumulative error claims reviewed through the lens of AEDPA can ever succeed in showing that the state court's adjudication on the merits was contrary to or an unreasonable application of clearly established federal law.  It is enough to say that petitioner has not shown an error of constitutional dimension with respect to any of her federal habeas claims.  Therefore, she cannot show that the cumulative effect of the alleged errors deprived her of fundamental fairness in the state criminal proceedings.  *See Morris v. Sec'y Dep't of Corr.*, 677 F.3d 1117, 1132 (11th Cir. 2012) (refusing to decide whether post-AEDPA claims of cumulative error may ever succeed in showing that the state court's decision on the merits was contrary to or an unreasonable application of clearly established law, but holding that petitioner's claim of cumulative error was without merit because none of his individual claims of error or prejudice had any merit); *see also, e.g., Forrest v. Fla. Dep't of Corr.*, 342 F.App'x 560, 565 (11th Cir. Aug. 21, 2009) (noting absence of Supreme Court precedent applying cumulative error doctrine to claims of ineffective assistance of counsel, but holding that petitioner's cumulative error argument lacked merit because he did not establish prejudice or the collective effect of counsel's error on the trial).

*Mitchell*, at *22.  That court noted:

> The law of the other circuit courts of appeals is mixed on the issue of whether a claim of "cumulative effect" or "cumulative error" is cognizable on federal habeas.  The Fourth, Sixth and Eighth Circuits do not recognize cumulative error claims on federal habeas.  *See Williams v. Anderson*, 460 F.3d 789, 816 (6th Cir. 2006) (claims of cumulative error are not cognizable on federal habeas because the Supreme Court has not spoken on this issue); *Fisher v. Angelone*, 163 F.3d 835, 852-53 (4th Cir. 1998) (ineffective assistance of counsel claims, like claims of trial court error, must be reviewed individually, rather than collectively); *Wainwright v. Lockhart*, 80 F.3d 1226, 1233 (8th Cir. 1996) ("Neither cumulative effect of trial errors nor cumulative effect of attorney errors are grounds for habeas relief.").  The Ninth Circuit recognizes cumulative error claims and expressly recognized *Chambers v. Mississippi*, 410 U.S. 284 (1973) as the clearly established federal law governing such claims.  *See Parle v. Runnels*, 505 F.3d 922, 928-29 (9th Cir. 2007).  The Tenth

(continued...)

To the extent that Harris's claim implicates *United States v. Cronic*, 466 U.S. 648 (1984), she likewise is entitled to no relief. In *Cronic*, the Supreme Court found that there are "circumstances that are so likely to prejudice the accused that the cost of litigating their effect in a particular case in unjustified." 466 U.S. at 658. In these limited circumstances, a defendant need not make the specific showing of prejudice required by *Strickland*. *Cronic*, 466 U.S. at 659. An ineffective assistance of counsel claim should be analyzed under *Cronic*, rather than *Strickland*, only if the defendant either "is denied counsel at a critical stage of his trial or if counsel entirely fails to subject the prosecution's case to meaningful adversarial testing." *Hunter v. Moore*, 304 F.3d 1066, 1069 (11th Cir. 2002).

The record demonstrates that Harris was represented by counsel at every critical stage of his trial and that meaningful adversarial testing of the State's case took place at trial and on appeal. Thus, for the reasons as stated, Harris is not entitled to habeas relief on her cumulative effect claim premised upon a claim of ineffective assistance of trial counsel.

## III. CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that the petition

---

[15](...continued)
 Circuit recognizes cumulative error claims and recognized *Brecht v. Abrahamson*, 507 U.S. 619 (1993), as the clearly established federal law on this issue. *See Darks v. Mullin*, 327 F.3d 1001, 1018 (10th Cir. 2003). The Second and Seventh Circuits recognize cumulative effect analysis of individual claims of ineffective assistance of counsel in applying the prejudice prong of *Strickland*. *See Goodman v. Bertrand*, 467 F.3d 1022, 1030 (7th Cir. 2006); *Lindstadt v. Keane*, 239 F.3d 191 (2d Cir. 2001).

*Mitchell*, at *22 n.11.

for habeas corpus relief filed by Harris be denied and that this case be dismissed with prejudice.  It is further

ORDERED that on or before **March 23, 2015,** the parties shall file objections to the said Recommendation.  Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which the party is objecting.  Frivolous, conclusive or general objections will not be considered by the District Court.  The parties are advised that this Recommendation is not a final order; therefore, it is not appealable.

Failure to file written objections to the proposed findings and advisements in the Magistrate Judge's Recommendation shall bar the party from a de novo determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings in the Recommendation accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982).  *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982).  *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (en banc), adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

DONE, this 9th day of March, 2015.

/s/ Susan Russ Walker
SUSAN RUSS WALKER
CHIEF UNITED STATES MAGISTRATE JUDGE